## SCHULTES v NAYLOR

Docket No. 129828. Submitted May 7, 1992, at Detroit. Decided June 2, 1992; approved for publication September 3, 1992, at 9:15 A.M.

Karen L. Rapp Schultes brought a wrongful discharge action in the Wayne Circuit Court against Michael A. Naylor, General Motors Corporation, and others, alleging breach of contract, intentional infliction of emotional distress, and unlawful sexual discrimination. The court, Richard P. Hathaway, J., granted summary disposition for the defendants. The plaintiff appealed.

The Court of Appeals *held:*

1. Both the written employment contract between the plaintiff and General Motors and the employee handbook clearly indicated that the plaintiff's employment was to be month to month. Therefore, her employment was terminable at will, as opposed to for just cause only, and her discharge for insubordination, which was preceded by reprimands for excessive tardiness, inability to work with fellow employees, and abuse of telephone privileges, was consistent with the terms of employment.

2. The plaintiff failed to establish a prima facie case of sexual discrimination in the absence of a showing of disparate treatment or intentional discrimination. None of the male employees with whom the plaintiff compared herself refused, as did the plaintiff, to reimburse General Motors for the cost of personal telephone calls. The plaintiff failed to show that the reasons stated for her discharge were mere pretext for intentional discrimination.

Affirmed.

1. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — EMPLOYEE HANDBOOKS.

An employment relationship is terminable at will by either party

REFERENCES

Am Jur 2d, Civil Rights §§ 154 *et seq.*; Job Discrimination §§ 138 *et seq.*; Master and Servant §§ 27 *et seq.*.

See the Index to Annotations under Discharge From Employment or Office; Equal Employment Opportunity; Sex Discrimination.

where the employee signs an agreement that employment will be month to month and receives an employee handbook so stating.

2. CIVIL RIGHTS — SEXUAL DISCRIMINATION — DISPARATE TREATMENT.

A prima facie case of sexual discrimination is established on the basis of disparate treatment upon a showing that the plaintiff is a member of a class deserving of protection under the Civil Rights Act and that, for the same conduct, the plaintiff was treated differently than a person of the opposite sex (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

3. CIVIL RIGHTS — SEXUAL DISCRIMINATION — INTENTIONAL DISCRIMINATION.

A prima facie case of intentional sexual discrimination in the termination of employment is established upon a showing that the plaintiff was a member of an affected class, that the plaintiff was discharged, that the defendant was predisposed to discriminate against persons in the class, and that the defendant actually acted upon that disposition in deciding to terminate employment (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

*Christensen & Bannigan, P.C. (by Thomas H. Bannigan),* for the plaintiff.

*Bodman, Longley & Dahling (by Joseph A. Sullivan and Martha B. Goodloe),* for the defendants.

Before: SAWYER, P.J., and NEFF and FITZGERALD, JJ.

PER CURIAM. Plaintiff appeals from a May 24, 1990, order dismissing her claims of sexual discrimination, breach of contract, and intentional infliction of emotional distress. MCR 2.116(C)(10). We affirm.

This appeal arises out of an employment relationship between plaintiff and defendant, General Motors Corporation. In November 1982, plaintiff was hired by GM and placed in the Risk Management Department. Initially, management was dissatisfied with plaintiff's job performance because of her consistent tardiness, inability to deal with

other workers effectively, and failure to complete work in a timely fashion. In 1985, plaintiff applied for a new position in the Corporate Strategic Planning Group of GM. Notwithstanding the interviewers' concerns about her past job performance, plaintiff was given a transfer to the CSPG, and worked there until her termination.

In August 1987, plaintiff took a leave of absence in order to have a child. When she returned to work, she was consistently reprimanded for tardiness. In February and March 1988, plaintiff's absences and tardiness became excessive. When the supervisors' efforts to reconcile the problem failed, they consulted with the personnel department to seek a solution. As part of the investigation into plaintiff's performance, an employee in personnel requisitioned plaintiff's phone records for her office extension. These phone records revealed that plaintiff made nearly $1,700 in phone calls at GM's expense.[1]

GM management sent plaintiff a letter informing her that she would be billed for the phone calls that were not related to her employment responsibilities with GM. The letter also reprimanded plaintiff for her excessive tardiness, inability to deal with her co-workers, and abuse of her phone privileges. Management sent an additional letter to plaintiff asking that she submit a payment plan for her personal phone calls by the following day. Plaintiff responded to the letter with a note that stated, in part, as follows:

> I have discontinued efforts to review the bills. For the following reasons, my plan for repayment of the phone bills of [plaintiff's extension] is as

---

[1] A good portion of the calls were made to plaintiff's relatives in Rhode Island and New Jersey. In addition, the records revealed that plaintiff used her GM-issued phone credit card to make calls from California while she was on vacation.

follows: I will pay zero amount of such telephone bills.

Plaintiff was subsequently discharged from her duties with GM and thereafter filed this action.

Plaintiff first argues that it was error for the trial court to summarily dismiss count I of her complaint, which alleged breach of contract. We disagree.

When she was hired, plaintiff was interviewed by Wayne Morrison, a GM employee. Plaintiff alleged that Morrison told her that she would remain at GM as long as she did her job. However, on the day she was hired, plaintiff signed an employment agreement stating that she was employed month to month only. The agreement contains a total integration clause and indicates that oral modifications are not permitted. Plaintiff also signed a number of subsequent compensation statements that acknowledged that the terms of the original employment agreement controlled her relationship with GM. Finally, the employee handbook, a copy of which plaintiff received, describes the employment terms as month to month.

*Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), stands for the proposition that employment contracts terminable only for cause are enforceable to the same degree as other contracts. *Id.* at 610. See also *Valentine v General American Credit, Inc,* 420 Mich 256, 258; 362 NW2d 628 (1984). It is clear from *Toussaint* that an employer who makes oral representations that employment may be terminated only for cause may be bound contractually if those representations are supported by company policy. *Toussaint, supra* at 598. Our Supreme Court has held that oral manifestations by an employer that an employee's job is secure must be

clear and unequivocal. *Rowe v Montgomery Ward & Co, Inc,* 437 Mich 627, 645; 473 NW2d 268 (1991). The representation must be based upon more than just an employer's statement regarding hopes for a long relationship. *Id.* at 640.

This Court has evaluated the same form contract and GM handbook involved in this case and concluded that they create an at-will employment relationship. See *Singal v General Motors Corp,* 179 Mich App 497, 504-505; 447 NW2d 152 (1989) (relying on *Taylor v General Motors Corp,* 826 F2d 452 [CA 6, 1987]). Plaintiff has not produced any evidence corroborating her claim that GM made oral manifestations regarding a just-cause employment relationship. Accordingly, plaintiff has failed to rebut the clear indication in her employment agreement that she was terminable at will.[2]

Count II of plaintiff's complaint alleges sexual discrimination in violation of the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* This claim is based on plaintiff's comparison of herself with male employees who also "abused" their phone privileges. The trial court concluded that "this is a case where it really is not one that centers on sexual discrimination but, rather, it is one without any factual dispute and I believe it is one of insubordination." We agree with the trial court.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the claim at issue. *Marsh v Dep't of Civil Service (After Remand),* 173 Mich App 72, 77; 433 NW2d 820 (1988). Under MCR 2.116(G)(5), the court must consider the affidavits, pleadings, depositions, and

_____

[2] It is also clear that none of the individuals named as defendants are liable because they were not parties to either the express or implied contract plaintiff alleges was formed on the day she was hired.

other documentary evidence presented by the parties. The benefit of doubt is to be given to the nonmoving party. If the trial court determines that there is a significant deficiency in the claim that cannot be cured by a full development of the factual record, then summary disposition under MCR 2.116(C)(10) is appropriate.

In order to avoid summary disposition in this case, plaintiff had to establish a genuine issue of material fact regarding whether a prima facie case of discrimination exists. See *Meeka v D & F Corp,* 158 Mich App 688, 694; 405 NW2d 125 (1987). To establish a prima facie case of sexual discrimination under the disparate-treatment theory, a plaintiff must show that she was a member of a class deserving of protection under the statute, and that, for the same conduct, she was treated differently than a man. *Marsh, supra* at 79. The crux of the sexual discrimination case is that there are similarly situated individuals who have been treated differently because of their sex. *Id.* It is plaintiff's burden to establish a prima facie case of sexual discrimination with evidence that is legally admissible and sufficient to state a prima facie claim. *Id.* at 80.

Our review of plaintiff's proofs reveals a factual deficiency that cannot be overcome. None of the male employees to whom plaintiff compared herself refused to reimburse GM for their phone usage. If plaintiff had shown that these men did refuse to pay, but were not terminated, her case would be much stronger. In light of her failure to make this showing, none of the men were similarly situated and, thus, the trial court properly dismissed this claim.

Finally, plaintiff contends that she was not terminated for insubordination. Specifically, plaintiff contends that defendants' insubordination justifica-

tion was merely a pretext for discriminating against her on the basis of sex. We disagree.

A second way to make a prima facie showing of discrimination based upon sex is to prove that the discrimination was intentional. *Hickman v W-S Equipment Co, Inc,* 176 Mich App 17, 21; 438 NW2d 872 (1989). In order to succeed under this theory, a plaintiff must show that she was a member of an affected class, that she was discharged, that the defendant was predisposed to discriminate against persons in the class, and that the defendant actually acted upon that disposition when the termination decision was made. *Id.*

In this case, plaintiff is obviously a member of a protected class and was discharged. The only question is whether she has made the requisite showing of a pretext for intentional discrimination in order to sustain the action. This question must be answered in the negative. All the incidents to which plaintiff points are actions taken by defendants in order to extract from plaintiff compliance with the rules under which all employees of GM were expected to work.[3] Plaintiff did not produce any evidence at the hearing on the motion for summary disposition that indicated a pattern of discrimination against women within GM. Rather, plaintiff made unsubstantiated allegations of discrimination against her that were insufficient to create a genuine issue of material fact regarding intentional discrimination.

Affirmed.

---

[3] Plaintiff's contention that she followed GM's directive to submit a plan for reimbursement for the phone calls is without merit. Plaintiff's letter, which indicated that her plan was to pay zero, was nothing more than an enticement for GM to take action.