COLEMAN-NICHOLS v TIXON CORPORATION

Docket No. 145235. Submitted November 3, 1993, at Detroit. Decided February 22, 1994, at 9:15 A.M.

Beverly Coleman-Nichols brought an action in the Wayne Circuit Court against Tixon Corporation, William Herbert, Tixon's general manager, and Armanda Herbert, Tixon's president, alleging sex discrimination, wrongful discharge from employment, intentional infliction of emotional distress, defamation, and fraudulent conveyance against all three defendants and interference with contractual relations against Armanda Herbert individually. The court, James J. Rashid, J., granted summary disposition for the defendants with respect to the claims of intentional infliction of emotional distress and defamation, but denied summary disposition of the claims of sex discrimination, wrongful discharge, tortious interference with contractual relations, and fraudulent conveyance. The defendants appealed by leave granted. The plaintiff cross appealed from the trial court's refusal to enter a default judgment in her favor based upon the defendants' alleged failure to cooperate with discovery.

The Court of Appeals *held:*

1. The plaintiff has presented a prima facie case of sex discrimination and has sustained her burden of demonstrating that the defendants' proffered legitimate, nondiscriminatory reason for their action was merely a pretext. There is a genuine issue of fact regarding whether the plaintiff was discriminated against on the basis of her gender.

2. The plaintiff should have been permitted to attempt to

REFERENCES

Am Jur 2d, Fraudulent Conveyances §§ 1, 3, 5-41, 145, 174; Job Discrimination §§ 151, 2003, 2006, 2008-2012, 2015-2020, 2022, 2024, 2735; Judgments §§ 1152, 1154, 1158; Master and Servant §§ 14-18, 20, 27, 32, 33; Wrongful Discharge §§ 95, 101-103, 120-122, 161-166.

Right to discharge allegedly "at-will" employee as affected by employer's promulgation of employment policies as to discharge. 33 ALR4th 120.

Liability of corporate director, officer, or employee for tortious interference with corporation's contract with another. 72 ALR4th 492.

demonstrate to the jury that her demotion may have been a disparate form of discipline. There was a genuine issue of fact regarding whether the plaintiff was treated differently than other employees similarly situated. The trial court properly refused to grant summary disposition with regard to the claim of sex discrimination.

3. Under either a contractual analysis or a legitimate-expectations analysis, the plaintiff did not present sufficient evidence to create a genuine issue of fact concerning the existence of an employment contract terminable for just cause only. The trial court erred in failing to dismiss the wrongful discharge claim.

4. The trial court erred in denying summary disposition of the plaintiff's claim of tortious interference with contractual relations against Armanda Herbert individually. The plaintiff presented no evidence of any affirmative acts by Armanda individually that corroborate an unlawful interference.

5. The trial court erred in denying summary disposition of the plaintiff's claim that the defendants fraudulently conveyed certain property contrary to §§ 4, 5, and 6 of the Uniform Fraudulent Conveyance Act, MCL 566.14, 566.15, 566.16; MSA 26.884, 26,885, 26.886, but properly denied summary disposition of the claim involving § 7 of the act, MCL 566.17; MSA 26.887. The plaintiff presented sufficient evidence to create a question of fact regarding the defendants' intent to defraud creditors under § 7 of the act.

6. The plaintiff was a creditor under the Uniform Fraudulent Conveyance Act and is entitled to pursue her claim under § 7 of the act.

7. Although the record confirms facts sufficient to warrant the entry of a default judgment based on the defendants' failure to cooperate with discovery, the trial court's refusal to enter a default judgment was not an abuse of discretion in light of the measures the court took to remedy the defendants' abuse of the discovery process.

8. The trial court's denial of summary disposition of the claims of wrongful discharge and tortious interference with contractual relations is reversed. The court's denial of summary disposition of the claims of sex discrimination and fraudulent conveyance is affirmed. The trial court's refusal to enter a default judgment based on the defendants' failure to cooperate with discovery is affirmed.

Affirmed in part and reversed in part.

1. CIVIL RIGHTS — SEX DISCRIMINATION — MOTIONS AND ORDERS — SUMMARY DISPOSITION.

A plaintiff must demonstrate a genuine issue of material fact

regarding whether a prima facie case of sex discrimination exists to avoid summary disposition of such a claim; a prima facie case of discrimination can be made by proving either intentional discrimination or disparate treatment; where the defendant puts forth a legitimate, nondiscriminatory reason for its actions in response to a prima facie case of discrimination, the plaintiff has the burden of showing that the proffered reason is merely a pretext (MCR 2.116[C][10]).

2. CIVIL RIGHTS — SEX DISCRIMINATION — PRIMA FACIE CASE.

In order to establish a prima facie case of intentional sex discrimination in employment, a plaintiff must prove membership in a protected class, discharge or other discrimination with respect to employment, predisposition of the defendant to discriminate against persons in the class, and action by the defendant upon that disposition when the employment decision was made; to establish a prima facie case under the disparate-treatment theory, the plaintiff must show membership in a protected class and that, for the same conduct or performance, a person of the other gender was treated differently.

3. MASTER AND SERVANT — TERMINATION FOR CAUSE.

An employment relationship terminable for just cause only can arise either by contract or by an employee's legitimate expectations in reliance on company policies; a general statement concerning job security, without further discourse about causes for termination, is insufficient to establish an employer's intent to create a just-cause contract.

4. TORTS — INTERFERENCE WITH AT-WILL EMPLOYMENT CONTRACT.

A plaintiff with a claim of tortious interference with an at-will employment contract against a defendant who is an officer of the employer must prove that the officer was acting outside the scope of the officer's authority; such a claim requires proof, with specificity, of affirmative acts by the defendant that corroborate the unlawful purpose of the interference.

5. FRAUDULENT CONVEYANCES — UNIFORM FRAUDULENT CONVEYANCE ACT — INTENT TO DEFRAUD — BADGES OF FRAUD.

Actual intent to defraud creditors can be inferred under the Uniform Fraudulent Conveyance Act from certain "badges" of fraud, although the existence of such badges is not conclusive evidence of intent to defraud; badges of fraud include lack of consideration for the conveyance, a close relationship between transferor and transferee, pendency or threat of litigation, financial difficulties of the transferor, and retention of the

possession, control, or benefit of the property by the transferor (MCL 566.17; MSA 26.887).

6. Fraudulent Conveyances — Uniform Fraudulent Conveyance Act — Creditor.

A creditor, for purposes of the Uniform Fraudulent Conveyance Act, is a person having a claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent; a person with a tort claim is a creditor from the date of the tort, any liabilities are considered as existing from the date the cause of action arose, and an action can be brought under the act before the rendering of a judgment in a preceding action involving the parties (MCL 566.11, 566.20; MSA 26.881, 26.890).

7. Pretrial Procedure — Discovery — Remedies — Default Judgments.

The entry of a default judgment for failure to cooperate with discovery is an extraordinary remedy reserved for use within the sound discretion of the trial court (MCR 2.313[B][2][c]).

*Kelman, Loria, Downing, Schneider & Simpson* (by *Janet M. Tooley*), for the plaintiff.

*Bell & Gardner, P.C.* (by *James W. McGinnis*), for the defendants.

Before: Gribbs, P.J., and Shepherd and P. E. Deegan,* JJ.

Shepherd, J. Defendants appeal by leave granted from a November 1, 1991, order of the trial court granting defendants partial summary disposition but denying summary disposition with regard to the balance of plaintiff's claims. Plaintiff cross appeals from the trial court's refusal to grant entry of a default judgment based on defendants' alleged failure to cooperate in discovery. We affirm in part and reverse in part.

This case arises out of plaintiff's employment relationship with Tixon Corporation, of which William Herbert was general manager, and his wife,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Armanda Herbert, was president. Tixon was in the business of collecting parking violation fines for the City of Detroit. Plaintiff began working for Tixon in September, 1986. After working as a supervisor for two years, plaintiff was promoted to the position of assistant operations manager. Plaintiff was primarily responsible for the operations support and the public service departments. Tixon's other assistant manager was Derrick Gray. Gray was responsible for the revenue and data entry departments, and was later also given the title of marketing director.

On May 9, 1990, defendant William Herbert issued a memorandum that announced the elimination of two positions—those of plaintiff and defendant William Herbert's son, Steven Herbert, ostensibly for economic reasons. Plaintiff's responsibilities were to be consolidated with those of Gray, who was to be given the sole assistant manager position. At the same time, plaintiff was offered an alternative position as a processor, with a reduction in pay. Plaintiff accepted the lower-level position, but resigned by June, 1990.

Following her demotion, plaintiff filed suit against defendants. Then, on November 2, 1990, after her resignation, plaintiff filed an amended complaint. Plaintiff's amended complaint alleged sex discrimination, wrongful discharge, intentional infliction of emotional distress, defamation, and fraudulent conveyance against all three defendants. Further, plaintiff's amended complaint alleged interference with contractual relations against defendant Armanda Herbert individually.

As noted above, on November 1, 1991, following a hearing on defendants' motion for summary disposition pursuant to MCR 2.116(C)(10), the trial court ordered partial summary disposition. The trial court granted defendants' motion for sum-

mary disposition regarding plaintiff's claims of intentional infliction of emotional distress and defamation, but denied summary disposition of plaintiff's claims of sex discrimination, wrongful discharge, tortious interference with contractual relations, and fraudulent conveyance. From that November 1, 1991, order, defendants appeal by leave granted. Plaintiff cross appeals from the trial court's refusal to enter a default judgment in her favor based upon defendants' alleged failure to cooperate in discovery.

On appeal, our review of a motion for summary disposition pursuant to MCR 2.116(C)(10) is de novo. *Adkins v Thomas Solvent Co,* 440 Mich 293, 302; 487 NW2d 715 (1992). A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Buczkowski v Allstate Ins Co (On Rehearing),* 198 Mich App 276, 278; 502 NW2d 343 (1993). The trial court must give the benefit of any reasonable doubt to the nonmoving party. *Schultes v Naylor,* 195 Mich App 640, 645; 491 NW2d 240 (1992). The trial court must then determine whether a record might be developed that would leave open an issue upon which reasonable minds might differ. *Featherly v Teledyne Industries, Inc,* 194 Mich App 352, 357; 486 NW2d 361 (1992).

I

First, defendants argue that the trial court should have granted summary disposition with regard to plaintiff's claim of sex discrimination under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* Defendants argue that plaintiff was not similarly situated to the male employees to whom she compares herself. Defendants also argue that plaintiff has not demon-

strated that the reasons given by defendants for eliminating plaintiff's position were a mere pretext.

In order to avoid summary disposition of this claim, plaintiff had to demonstrate a genuine issue of material fact regarding whether a prima facie case of discrimination exists. *Schultes, supra* at 645; MCR 2.116(C)(10). A prima facie case of discrimination can be made by proving either intentional discrimination or disparate treatment. *Reisman v Regents of Wayne State Univ,* 188 Mich App 526, 538; 470 NW2d 678 (1991). In order to establish a prima facie case of intentional sex discrimination, a plaintiff must show that she was a member of a protected class, that she was discharged or otherwise discriminated against with respect to employment, that the defendant was predisposed to discriminate against persons in the class, and that the defendant acted upon that disposition when the employment decision was made. *Schultes, supra* at 646. In order to establish a prima facie case of sex discrimination under the disparate-treatment theory, a plaintiff must show that she was a member of a protected class, and that, for the same conduct or performance, she was treated differently than a man. *Id.* at 645. Where, in response to a prima facie case of discrimination, a defendant puts forth a legitimate, nondiscriminatory reason for its actions, the plaintiff has the burden of showing that the proffered reason was merely a pretext. *Featherly, supra* at 362.

A

In the present case, our review of the record reveals that there is a genuine issue of fact regarding whether plaintiff was discriminated against on

the basis of her gender. MCR 2.116(C)(10). There is no question that plaintiff is a member of a protected class, and that an employment decision was made that was adverse to her. *Schultes, supra* at 646. Further, it is undisputed that a male co-worker, Gray, was paid significantly more as a new supervisor than plaintiff was paid for being an experienced supervisor. Although Gray was promoted to assistant manager a few months after plaintiff, Gray also earned more than plaintiff in the assistant manager position. Then, when the two assistant manager positions were consolidated, Gray was chosen over plaintiff despite plaintiff's greater experience. This was sufficient to create a prima facie case of sex discrimination. *Reisman, supra* at 538.

While at this stage of the proceedings there may be some dispute regarding whether plaintiff and Gray were similarly situated, this is a factual question to be answered by a jury. It does appear that plaintiff's duties as an assistant manager were different from Gray's. Plaintiff oversaw the public relations and operations support departments. Gray oversaw the revenue and data entry departments, and was later also given the title of marketing director when the assistant manager positions were consolidated. However, on the basis of the job descriptions and various other exhibits presented by the parties, we cannot say with certainty that the two assistant manager positions were substantially different.

While plaintiff acknowledges that Gray had attained a higher level of education with his college degree, we cannot say that Gray's college degree made him any more qualified for the consolidated assistant manager position because the position entailed responsibilities in a wide array of disciplines. By comparison, plaintiff was already profi-

cient at supervising the public relations and operations support departments. Overall, plaintiff and Gray appear to have been equally qualified for the consolidated assistant manager position—although plaintiff had been with the company longer. Thus, we are left with a question of fact regarding why plaintiff was not chosen for the position despite her equal or superior qualifications. *Schultes, supra* at 645. Plaintiff has presented a prima facie case of sex discrimination.

In response to plaintiff's prima facie case of sex discrimination, defendants argue that plaintiff's position was eliminated because of economic necessity. However, plaintiff has presented evidence that defendant Tixon Corporation operated at a substantial profit for the period in question. Thus, plaintiff has sustained her burden of demonstrating that defendants' proffered reason was merely a pretext. *Featherly, supra* at 362.

### B

On an independent basis, as discussed above, we would sustain plaintiff's claim of sex discrimination in light of the disparate treatment she received in comparison to Gray. However, in a separate argument, plaintiff also alleges that other male employees were not proportionately disciplined for various incidents of misconduct, while she was constructively discharged for remarking that the Herberts spent their money in ways other than on their employees. On this point—with the elimination of a valid economic rationale for defendants' actions, as noted above—plaintiff should also be permitted to attempt to demonstrate to a jury that her demotion may have been a disparate form of discipline. The evidence presented by plaintiff in support of this argument strongly sug-

gests that a number of other male employees were not proportionately disciplined for far more egregious conduct. For example, some male employees received neither a demotion nor a pay cut for such serious infractions as fighting on the job and falsifying timesheets. Thus, here also there is a genuine issue of fact. MCR 2.116(C)(10).

In sum, there exists a genuine issue of material fact whether plaintiff was treated differently than other employees similarly situated. It appears that the record may be further developed in support of plaintiff's claim of sex discrimination. *Featherly, supra* at 357. The trial court properly refused to grant summary disposition with regard to this count.

II

Next, defendants argue that the trial court erred in refusing to grant summary disposition of plaintiff's claim of wrongful discharge. Defendants argue that plaintiff was not discharged, but rather resigned. Further, defendants argue that even if plaintiff was constructively discharged, she cannot prove the existence of an employment contract providing for termination only for just cause. Here, we agree that there is no genuine issue of material fact that plaintiff's employment was terminable only for just cause. MCR 2.116(C)(10). No reasonable juror could find that plaintiff had a just-cause employment contract. *Featherly, supra* at 357.

In the recent case of *Rood v General Dynamics Corp,* 444 Mich 107, 119, 140; 507 NW2d 591 (1993), our Supreme Court reiterated that a just-cause employment relationship can arise either by contract or by an employee's legitimate expectations in reliance on company policies. However,

there is a strong presumption that employment contracts for an indefinite duration are terminable at the will of either party for any reason or for no reason at all. *Id.* at 116. Under a contractual theory, courts use an objective test, looking at the expressed words of the parties and their visible acts to determine whether a reasonable person could have interpreted the words or conduct to create such a contract. *Id.* at 119. Under the legitimate-expectations theory, the courts must "examine employer policy statements, concerning employee discharge, if any, to determine, as a threshold matter, whether such policies are reasonably capable of being interpreted as promises of just-cause employment." *Id.* at 140.

In support of her claim of a just-cause employment relationship, plaintiff stated during her deposition that William Herbert told her that she would keep her job as long as Tixon was doing business. In addition, plaintiff emphasizes that she was given a management training manual that also allegedly supports her claim of a just-cause contract. Plaintiff points to language in the training manual that establishes a system of progressive discipline, where the sanction of discharge is utilized only as a last resort.

However, the training manual describes procedures to be used by plaintiff in her position as assistant manager when overseeing other employees. The manual does not state that it applies to assistant managers such as plaintiff. Further, plaintiff acknowledges that she earlier had received a separate personnel manual that reserves the employer's right to discharge any employee with or without cause upon thirty days' notice.

After reviewing the evidence presented, we conclude that a reasonable person could not have interpreted the parties' words and conduct, along

with the content of the employment materials, to create a just-cause contract of employment. *Id.* at 119. Further, none of defendants' policies were capable of instilling a legitimate expectation of just-cause employment. *Id.* at 138-139.

The alleged oral statement by William Herbert that plaintiff would have a job as long as Tixon was in business was a very generalized expression of Herbert's hope for the future, and did not specifically address the issue of a just-cause employment relationship. A general statement concerning job security, without further discourse about causes for termination, is insufficient to establish an employer's intent to create a just-cause contract. *Id.* at 127. Here, Herbert's general expression of hope for the future does not "clearly permit a construction" that the employer intended to enter into a just-cause employment relationship. *Rowe v Montgomery Ward & Co, Inc,* 437 Mich 627, 641; 473 NW2d 268 (1991).

Considering also the training manual, the progressive discipline system found therein is not clearly applicable to plaintiff. Nowhere in the training manual does it state that the progressive discipline system is applicable to assistant managers. Thus, the present case is clearly distinguishable from the recent case of *Snell v UACC Midwest, Inc,* 194 Mich App 511, 513; 487 NW2d 772 (1992), wherein this Court took into consideration a progressive discipline system before finding a genuine issue of fact regarding the existence of a just-cause contract.

Perhaps most importantly, plaintiff acknowledges that the basic personnel manual reserves the employer's right to terminate any employee with or without cause upon thirty days' notice. Thus, under either a contractual analysis or a legitimate-expectations analysis, plaintiff has not

presented sufficient evidence to create a genuine issue of fact of a just-cause employment relationship. The trial court erred in failing to dismiss this claim pursuant to MCR 2.116(C)(10).

III

Third, defendant Armanda Herbert argues that the trial court erred in denying summary disposition with regard to plaintiff's claim of tortious interference with contractual relations against her individually. Defendant argues that plaintiff has presented no evidence from which it can be inferred that she acted outside the scope of her authority. We agree, and dismiss this claim.

Under a claim of tortious interference with an at-will employment contract, where the defendant is an officer of the employer, a plaintiff has the particularly heavy burden of proving that the officer was acting outside the scope of her authority. *Feaheny v Caldwell,* 175 Mich App 291, 304-305; 437 NW2d 358 (1989). Further, such a claim requires "proof, with specificity, of affirmative acts by the defendants which corroborated the unlawful purpose of the interference." *Id.* at 305.

In the case at bar, plaintiff has presented no evidence of any affirmative acts by Armanda Herbert individually that corroborate an unlawful interference. Plaintiff's strongest evidence is her own hearsay statement that she was told by another employee that Armanda Herbert wanted plaintiff out of the company. Even if this were considered sufficient evidence of Armanda Herbert's intent, it is not evidence of any affirmative acts by Armanda Herbert that interfered with plaintiff's employment relationship. *Id.* at 305. Thus, the trial court should have dismissed this claim pursuant to MCR 2.116(C)(10).

IV

Next, defendants argue that the trial court erred in denying summary disposition of plaintiff's claim that defendants fraudulently conveyed certain property contrary to the Uniform Fraudulent Conveyance Act (UFCA), MCL 566.11 *et seq.*; MSA 26.881 *et seq.* While we agree that summary disposition of plaintiff's claims should have been granted under §§ 4, 5, and 6 of the UFCA, MCL 566.14; MSA 26.884, MCL 566.15; MSA 26.885, and MCL 566.16; MSA 26.886, the trial court properly denied summary disposition with respect to § 7, MCL 566.17; MSA 26.887.

Sections 4, 5, 6, and 7 of the UFCA render fraudulent certain conveyances, as follows:

Sec. 4. Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

Sec. 5. Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

Sec. 6. Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

Sec. 7. Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or

defraud either present or future creditors, is fraudulent as to both present and future creditors.

Herein, plaintiff alleges that she is a creditor of defendant Tixon Corporation and that defendant corporation violated the UFCA by paying certain personal debts of William and Armanda Herbert without receiving consideration.

We note at the outset that §§ 4, 5, and 6 of the UFCA require that as a result of the allegedly fraudulent conveyances, defendant corporation either was rendered insolvent (§ 4), was left with unreasonably small capital (§ 5), or intended to incur debts beyond its ability to pay as they mature (§ 6). In the case at bar, plaintiff has presented no evidence that Tixon was put in any of the above precarious financial positions as a result of some fraudulent conveyance. Thus, the trial court should have granted summary disposition under these statutory sections. MCR 2.116(C)(10).

However, we believe that plaintiff has established a proper claim under § 7 of the act. Under § 7 of the UFCA, plaintiff must show that Tixon is a person under the act; that it made a conveyance; that it did so with actual intent to hinder, delay, or defraud creditors; and that plaintiff is a creditor under the act. MCL 566.17; MSA 26.887; *Kelley v Thomas Solvent Co,* 725 F Supp 1446, 1452 (WD Mich, 1988). Herein, defendants do not dispute that Tixon is a person under the act, or that Tixon made certain conveyances. Rather, defendants argue that plaintiff has not shown that Tixon intended to hinder, delay, or defraud creditors. Defendants also argue that plaintiff is not a creditor under the act.

Under § 7 of the UFCA, actual intent to defraud may be inferred from certain "badges" of fraud. *Kelley, supra* at 1456. These badges of fraud are

not conclusive evidence, but may be strong or weak depending upon their nature and number occurring in the same case. *Id.* Often recognized badges of fraud include: lack of consideration for the conveyance; a close relationship between transferor and transferee; pendency or threat of litigation; financial difficulties of the transferor; and retention of the possession, control, or benefit of the property by the transferor. *Id.* at 1457. In *Regan v Carrigan,* 194 Mich App 35, 38-39; 486 NW2d 57 (1992), this Court recognized that actual intent to defraud can be inferred from certain badges of fraud, stating as follows:

> A grantee who receives property or money without giving fair consideration to the fraudulent grantor is subject to having the conveyance set aside and also subject to any other remedies normally available to the creditor. . . . The courts will closely scrutinize transactions between a husband and wife when creditors are involved.

In the present case, plaintiff presented evidence of a number of badges of fraud to support an inference of actual intent to defraud. For example, plaintiff produced evidence of an unsecured loan of approximately $130,000 from Tixon to William Herbert. Further, it is undisputed that Tixon paid William Herbert's attorneys' fees in a criminal case involving charges of fraud, apparently without consideration.[1] Moreover, an audit of Tixon by an independent accounting firm in 1988 revealed "weaknesses" in documenting business expenses, whereby extravagant personal expenses of William and Armanda Herbert were paid by the company.

---

[1] Our Supreme Court recently addressed various procedural issues in William Herbert's criminal appeal, *People v Herbert,* 444 Mich 466; 511 NW2d 654 (1993). However, that matter is only tangentially relevant to this appeal.

On the basis of the foregoing, plaintiff presented sufficient evidence to create a question of fact regarding defendants' intent to defraud creditors under § 7 of the UFCA.

The next inquiry, then, is whether plaintiff was a "creditor" under the act. We believe that she was.

MCL 566.11; MSA 26.881 defines a "creditor" as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." MCL 566.20; MSA 26.890 grants a "creditor whose claim has not matured" a list of specific remedies under the UFCA. Similarly, in discussing the definition of a creditor under the UFCA, this Court in *Churchill v Palmer,* 57 Mich App 210, 214; 226 NW2d 60 (1974), noted that "[o]ne with a tort claim is a creditor from the date of the tort; any liabilities are considered as existing from the date the cause of action arose." According to the rule set forth in *Churchill, supra* at 215, an action can be brought under the UFCA "prior to the rendering of a judgment in a preceding action." Thus, we are convinced that plaintiff was a proper "creditor" under the UFCA when her tort claim for sex discrimination arose in 1988. Accordingly, summary disposition of plaintiff's claim under § 7 of the UFCA would have been improper. MCR 2.116(C)(10).

In a brief side issue, defendants argue that it would be improper to allow plaintiff's claim under the UFCA to go to a jury. While we agree that there might be a possibility of prejudice were the same jury to hear both plaintiff's sex discrimination claim and her claim under the UFCA, we express no opinion regarding this issue at this time because it would be premature to do so. Affirming the decision of the trial court, we simply conclude that plaintiff is entitled to pursue her

claim under § 7 of the UFCA. Now that the trial court knows that plaintiff may pursue a remedy under § 7, it may adopt an appropriate procedural mechanism such as separate juries or a bifurcated trial.

V

Lastly, in her cross appeal, plaintiff argues that the trial court erred in refusing to grant a default judgment because of defendants' alleged failure to cooperate in discovery. While our review of the record does confirm facts sufficient to justify the entry of a default judgment pursuant to MCR 2.313(B)(2)(c), this extraordinary remedy is nevertheless reserved for use within the sound discretion of the trial court. *Adams v Perry Furniture Co (On Remand),* 198 Mich App 1, 15; 497 NW2d 514 (1993). In the case at bar, rather than enter a default, the trial court took other measures to remedy defendants' abuse of the discovery process, e.g., the trial court struck certain controversial defense witnesses. While the record reflects that the trial court seriously considered the possibility of entering a default judgment, we cannot say that its refusal to do so was an abuse of discretion in light of its alternate remedy. *Id.*

In summary, we reverse the trial court's denial of summary disposition of plaintiff's claims of wrongful discharge and tortious interference with contractual relations. We affirm the trial court's decision to deny summary disposition of plaintiff's claims of sex discrimination and fraudulent conveyance under the UFCA, as discussed herein. The trial court did not abuse its discretion in refusing to enter a default judgment for plaintiff despite defendants' failure to cooperate in discovery.

Affirmed in part and reversed in part.