# STATE OF MICHIGAN

# COURT OF APPEALS

---

FELICIA TALLEY,

       Plaintiff-Appellant,

v

DETROIT PUBLIC SCHOOLS, ROBYNN
DIAMOND and VICKIE HALL,

       Defendants-Appellees.

UNPUBLISHED
January 24, 2017

No. 329005
Wayne Circuit Court
LC No. 14-007836-CZ

---

Before: RIORDAN, P.J., and HOOD and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants, in this action where plaintiff alleged discrimination on the basis of race and gender. We affirm.

On appeal, the thrust of plaintiff's arguments focus on her allegations that defendants' (employer Detroit Public Schools, now former Chief of Human Resources Vickie Hall, and now former Human Resources executive Director of Talent Acquisition Robynn Diamond) proffered reasons for not selecting plaintiff for the positions of Executive Director of Compensation and Benefits and Director of Compensation were mere pretext for otherwise unlawful discrimination. We disagree.

In *Dawoud v State Farm Mut Auto Ins Co*, ___ Mich App ___, ____; ___ NW2d ___ (2016) (Docket Nos. 327915, 327927); slip op at 3, this Court set forth the standard for reviewing a trial court's ruling on a motion brought pursuant to MCR 2.116(C)(10):

> This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 279; 769 NW2d 234 (2009). A motion under this subrule is properly granted if there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 278. All documentary evidence submitted by the parties is considered, and it is considered in the light most favorable to the nonmoving party. *Id.*

-1-

MCL 37.2202 provides, in pertinent part, as follows:

(1) An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status.

In *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001), the Michigan Supreme Court recognized that in some discrimination cases, a plaintiff can present direct evidence of discrimination. In those cases, a plaintiff's case will move forward and the plaintiff can establish discrimination in the same manner as any other civil case. Direct evidence is evidence, which, if believed, would lead to the conclusion that unlawful discrimination at least partly motivated an employer's actions. *Id*. at 462. Conversely, in cases where a plaintiff cannot produce direct evidence of discrimination, to withstand summary disposition, the plaintiff must adhere to the steps set forth in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). *Id*. By doing so, a plaintiff can "present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination." *Hazle*, 464 Mich at 462, quoting *Debrow v Century 21 Great Lakes, Inc* (*After Remand*), 463 Mich 534, 537-538; 620 NW2d 836 (2001). This approach may be used in both race and gender discrimination cases. *Hazle*, 464 Mich at 462-463. Where plaintiff in the instant case has not brought forward direct evidence of race and gender discrimination, she must rely on "the *McDonnell Douglas* framework." *Id*. at 463.

Under *McDonnell Douglas*, a plaintiff must first offer a "prima facie case" of discrimination. Here, plaintiff was required to present evidence that (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination. [*Hazle*, 464 Mich at 463 (citations and footnote omitted).]

Once a plaintiff has made out a prima facie case, a presumption of discrimination will arise. *Hazle*, 464 Mich at 463. The prima facie case results in an inference of discrimination, "because [a Court will] presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id*., quoting *Furnco Constr Corp v Waters*, 438 US 567, 577; 98 S Ct 2943; 57 L Ed 2d 957 (1978). Then, in an attempt to rebut the presumption of discrimination established by the creation of the prima facie case, "the defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case." *Hazle*, 464 Mich at 464.

The articulation requirement means that the defendant has the burden of producing evidence that its employment actions were taken for a legitimate, nondiscriminatory reason . . . . If the employer makes such an articulation, the presumption created by the *McDonnell Douglas* prima facie case drops away. [*Id.* at 464-465 (footnotes omitted).]

On appeal, as in the trial court, defendants do not challenge that plaintiff belongs to a member of a protected class or that she has suffered adverse employment action in that she was not given two positions with her company that she applied for (although she is still employed with the company). Defendants also do not dispute that plaintiff was otherwise qualified for the positions applied for and it appears they do not dispute that the jobs were given to another person under circumstances giving rise to an inference of unlawful discrimination. In effect, there appears to be no contention that plaintiff failed to make out a prima facie case of discrimination. Therefore, we may properly narrow our review of the trial court's decision to the second two stages of the *McDonnell Douglas* burden-shifting analysis.

Arguing that they did not discriminate when they did not select plaintiff for the EDCB and DOC positions, defendants offered the following reasons for declining to promote plaintiff. With regard to the EDCB position, defendants asserted that Todd Faison was selected over plaintiff because the Chief Human Resource Officer for Detroit Public Schools, Vickie Hall determined that Faison was the better candidate "based upon his strategic background in compensation and benefits[.]" In support, defendants produced Hall's May 27, 2015 affidavit, in which she averred, in pertinent part, as follows:

The [human resources] department was staffed with approximately 43 employees/contract workers. I was tasked with evaluating a plan of reorganization that was initiated by a consulting firm. However, the suggested plan had not been executed prior to my starting. The goal of the reorganization plan was to properly situate talent, gain better efficiencies and provide better customer service to our internal and external clients. Emergency Manager Roy Roberts was interested in bringing a business model into the department to gain greater efficiencies and to develop policies and procedures that were current and up to date in this area.

\* \* \*

I considered Mr. Faison to be the best candidate for the position, based on his strategic background in compensation and benefits. He had a business acumen that was strong and analytical. He was able to provide very definite examples of his work. Of particular interest was his work on developing employee assistance programs, understanding compensation bands based on market and similar situated [sic] businesses and his ability to make to assess [sic] a situation and make a decision to the well-being of the organization.

Concerning the DOC position, defendants stated that William Bogle was selected over plaintiff because plaintiff did not perform well in her interview. In support of this assertion, defendants pointed to the deposition testimony of Cassandra Washington, an executive director with DPS,

who testified that she and Faison sat on a panel together, interviewing four or five candidates for the position. Washington asked questions of the candidates that had been drafted by DPS's Talent Acquisition Division, and it was ultimately Faison, who held the EDCB position, that selected Bogle for the DOC position. After stating that she recommended Bogle and another candidate for the DOC position, Washington explained why she did not recommend plaintiff for the position:

> *Q.* Okay. So what is it about the interview process that caused you not to recommend Ms. Talley?
>
> *A.* Well, during the interview, from what I recall, there were specific questions that were asked that she did not articulate well, as to her knowledge base, experience, as well as forward thinker, innovation, creativity with respects to the position.
>
> The division was going through a reorganization as some of the job – well, all of the job descriptions were rewritten, and what was currently being performed in the role was being expanded.
>
> And so during the interview process, we asked questions that were – that honed in currently on what they were doing and how they would move that position forward. And she did not give the best articulation of that in her responses.

Washington also testified, in response to questioning from plaintiff's counsel, that DPS's Human Resources Division was undergoing significant changes pertaining to compensation:

> Well, the compensation package, to my knowledge, was, you know, an addition to the department. And so there were questions about the current compensation structure, and comparison to what the idea of that individual's compensation philosophy was. Where did they see the District moving forward? Where was [sic] some of the best practices? How did it coordinate, you know, across industry? And give me your experience and your knowledge relative to compensation.

After being questioned by plaintiff's counsel about how duties related to compensation may have changed in the Human Resources Division, Washington further testified about plaintiff's performance during the interview:

> Yeah, I – yes, there were several questions that I asked that were relative to compensation. But I don't remember specifically what I asked. I do recall that there was minimum interjection and that [plaintiff] did not expand upon her responses. And when asked certain behavioral questions or situational questions, you know, there was not articulation beyond what was [already] occurring [at DPS].

Therefore, as the trial court correctly noted, once defendants presented evidence that their reasons for not selecting plaintiff for the EDCB and DOC positions were legitimate and non-

discriminatory in nature, the presumption of discrimination created by the prima facie case was eliminated, and the burden shifted to plaintiff to establish that these reasons were merely pretext for otherwise unlawful discrimination. *Hazle*, 464 Mich at 465.

As the Michigan Supreme Court recognized in *Hazle*, 464 Mich at 465, at the third stage of the burden-shifting analysis, the plaintiff must undertake the following to withstand a motion for summary disposition:

> [T]he plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is "sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Lytle*, *supra* at 176. As we first held in *Town v Michigan Bell Telephone Co*, 455 Mich 688, 698; 568 NW2d 64 (1997), and then reaffirmed in *Lytle*, *supra* at 175-176, a plaintiff "must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful] discrimination."

The pivotal inquiry at this stage is "whether consideration of a protected characteristic was a motivating factor, namely, whether it made a difference in the contested employment decision." *Hazle*, 464 Mich at 466 (citation and footnote omitted).

Plaintiff's arguments on appeal are focused on whether defendants' stated reasons for not selecting her for the EDCB and DOC positions were merely a pretext for otherwise unlawful discrimination. Plaintiff raises four arguments in support of her claims of pretext and each will be discussed in turn.

Plaintiff first asserts that Faison was not properly qualified for the EDCB position because of his lack of relevant experience, and that plaintiff had more experience. In support of this assertion, plaintiff points to the job posting for the EDCB position, which stated that "[a] minimum of 5-7 years of direct experience in Benefits and Compensation" is required. After a close and thorough review of the record evidence, we conclude that plaintiff's characterization of Faison's experience is not supported by the record. During Hall's deposition, she detailed the merits of Faison's experience yielded both from his resume and during his interview for an Employee Relations position that led her to conclude that he was a viable candidate with the required qualifications for the EDCB position. According to Hall, her extensive background in human resources allowed her to "know and [  ] identify knowledge that is needed, [as well as] expertise and fit for an organization when I'm looking for someone to fill a position."

In support of her argument that Faison's lack of qualifications demonstrate that defendants' stated reasons for not selecting plaintiff for the EDCB position were mere pretext, plaintiff also relies on *Farber v Massillon Bd of Ed*, 917 F2d 1391, 1398 (CA 6, 1990), where the United States Court of Appeals for the Sixth Circuit concluded that the employer's proffered reasons for selecting another candidate for a position amounted to pretext for discrimination. In *Farber*, the plaintiff was a teacher, and the position at issue called for 10 years of experience, but did not require seniority. *Id*. at 1397. The plaintiff's competitor for the position had only 8 years of experience, and when challenged, the defendant employer gave the explanation that the competitor was hired because of seniority. *Id*. at 1398. The United States Court of Appeals for

the Sixth Circuit concluded that the district court erred in not finding evidence of pretext for unlawful discrimination under those circumstances. *Id*. at 1398. In contrast, in the present case, Hall clearly stated that she concluded, both on the basis of Faison's resume and information provided in his interview, that Faison satisfied the qualifications of the EDCB position and that she determined him to be the best candidate for the EDCB position. During her deposition, after extensively reviewing Faison's qualifications set forth in his resume, Hall stated that he had 6 years of necessary experience that satisfied the requirements for the EDCB position. Accordingly, unlike in *Farber*, this is not a case where the defendant employer is relying on qualifications that are not even relevant to a position to justify its employment decision. Accordingly, plaintiff's argument that defendants' proffered reasons were merely pretext for unlawful discrimination is not persuasive.

Plaintiff also argues that the fact that Faison was considered for the EDCB position without applying in compliance with DPS procedures supports a conclusion that defendants acted with discriminatory intent. Plaintiff points to the DPS Handbook, as well as the job posting for the EDCB position, asserting that they required Faison to apply online for the EDCB position.

During her deposition, Hall herself clearly stated that as DPS's Chief Human Resources Officer, she was authorized to overlook the requirement that Faison apply online for the EDCB position where she concluded that he had the knowledge, background and expertise necessary for the EDCB position.[1] Hall also testified that Faison had applied online for a different position and she did not feel it was necessary for him to go through the online process again since they had all of the relevant information. Plaintiff directs this Court to the United States Court of Appeals for the Sixth Circuit's decision in *Kimble v Wasylyshyn*, 439 Fed Appx 492, 495, 499-500 (CA 6, 2011), for support of her position. In that case, the defendant employer stated that its reasons for not promoting the plaintiff, a police officer, were related to its desire to increase citation and arrest statistics, and the plaintiff did not meet that standard. The plaintiff pointed to an earlier promotion of another individual whose enforcement statistics were the lowest in the relevant applicant pool, arguing that the defendant's proffered reasons for not promoting the plaintiff were thus contrived. *Id*. at 499. The United States Court of Appeals for the Sixth Circuit agreed, noting that the plaintiff's argument "cast[ ] doubt" on the sincerity of the defendant employer's motives. *Id*. at 500.

Unlike in *Kimble*, the record evidence here, while uncontroverted that Faison did not apply for the specific EDCB position online, does not yield a showing of discriminatory animus. In other words, even if defendants relaxed the applicable policies and procedures to allow Faison to apply for the EDCB position, there is no indication from the record that this decision was motivated by discrimination against plaintiff on the basis of her gender. Instead, the record reflects that defendants' actions and decisions followed principled business judgments.

---

[1] Accordingly, the trial court did not need to rely on evidence not of record, as plaintiff asserts, in concluding that Faison's hiring was not improper where he did not apply online for the EDCB position.

Plaintiff also directs this Court's attention to its decision in *Coleman-Nichols v Tixon Corp*, 203 Mich App 645, 651-653; 513 NW2d 441 (1994). In *Coleman-Nichols*, this Court concluded that factual issues existed with regard to whether the plaintiff suffered discrimination on the basis of her gender where she was paid less than a male counterpart who was less experienced, and where that same male counterpart was chosen over the plaintiff for an employment position, even where the plaintiff had more experience. *Id*. at 652. *Coleman-Nichols* is factually distinguishable from the instant case, where the record evidence here confirms that Hall, with extensive human resources experience, determined Faison to be properly qualified for the EDCB position. Put another way, the record demonstrates that Faison was selected because of the skills and credentials he could offer to DPS at a time when DPS was specifically looking for candidates that met its strategic vision during a period of significant transition. The record evidence, viewed in the light most favorable to plaintiff, does not yield anything to show that defendants considered plaintiff's gender or race in making the final employment decision. *Hazle*, 464 Mich at 466. Indeed, defendants put forth evidence that their decision was one grounded in business judgment, something that appellate courts are reluctant to interfere in. *Id*. at 475-476. In sum, plaintiff has not demonstrated that the evidence that Faison did not follow exact DPS protocol in applying for the EDCB position would permit a jury to conclude that DPS's proffered reasons for hiring Faison were a pretext for unlawful discrimination. *Id.* at 476.

Plaintiff also contends that where she presented evidence that she was more qualified than Bogle for the DOC position, and that defendants' contention that Bogle was hired because he was "more articulate" than plaintiff during his interview does not amount to a legitimate, non-discriminatory reason for his selection, particularly where the scoring sheet that defendants relied on from plaintiff's interview contained incomplete scores.

Plaintiff relies on *Campbell v Dep't of Human Servs*, 286 Mich App 230, 242; 780 NW2d 586 (2009), asserting that this case stands for the legal proposition that where scores from an interview are not provided, a genuine issue of material fact arises with regard to whether the selection process resulted from unlawful discrimination. In *Campbell*, this Court reviewed the trial court's decision to deny the defendant's motion for judgment notwithstanding the verdict (JNOV), concluding that there was evidence for the jury to conclude that the defendant's proffered reasons for its employment decision were pretextual. *Id*. at 242. The Court reached this conclusion where the defendant stated that it promoted another male candidate over the plaintiff on the basis of objective scoring criteria and written recommendations, but failed to produce this evidence, even when it was available. *Id*. at 242. Specifically, the defendant stated that the other candidate had the highest score in the interview process, but failed to produce the actual evidence of that. *Id*. In affirming the trial court's denial of the defendant's motion for JNOV, this Court stated, in pertinent part, as follows:

> Defendant claimed Johnson had the highest interviewing score, but failed to introduce the actual scores as corroborating evidence, despite their availability. This was of particular importance because interview performance apparently was the key factor in the promotion decision. Further, plaintiff's written qualifications were more than sufficient and she had been trained in the type of interviewing employed. *In light of these facts, along with the evidence on the record that supported an inference of discrimination based on defendant's pattern of*

*promoting men who were less qualified than plaintiff*, plaintiff created a triable issue regarding whether defendant's stated reason for promoting Johnson was a mere pretext for gender discrimination. [*Id*. (Emphasis added.)]

Defendants, in their brief on appeal, concede, "Todd Faison's scores were not located, but it is undisputed that Plaintiff was not selected by Mr. Faison." Accordingly, unlike the facts in *Campbell*, there is no evidence to suggest that defendants had access to Faison's scores and failed to produce them, and there is also no evidence in this case that defendants routinely promoted men over plaintiff who are less qualified. Therefore, *Campbell*, decided in the context of a JNOV motion, is distinguishable, and plaintiff's claims of pretext for unlawful discrimination are not persuasive, where the record evidence does not demonstrate that plaintiff's race played any role in defendants' decision to select Bogle over plaintiff for the DOC position. *Hazle*, 464 Mich at 466.

Finally, plaintiff contends that the trial court's decision ought to be reversed where it relied on what plaintiff characterizes as a "same group inference," which has been rejected by the United States Supreme Court, as well as this Court. In *Oncale v Sundowner Offshore Serv, Inc*, 523 US 75, 78; 118 S Ct 998; 140 L Ed 2d 201 (1998), the male petitioner filed a lawsuit against his employer claiming sexual harassment in violation of Title VII of the Civil Rights Act of 1964. *Oncale*, 523 US at 75. Where the lower courts in that case concluded that the petitioner did not have a cause of action against his employer for harassment by male coworkers, in *Oncale*, 523 US at 78-79, the United States Supreme Court disagreed, ruling, in pertinent part, as follows:

> Title VII's prohibition of discrimination "because of ... sex" protects men as well as women, *Newport News Shipbuilding & Dry Dock Co v EEOC*, 462 US 669, 682; 103 S Ct 2622, 2630; 77 L Ed 2d 89 (1983), and in the related context of racial discrimination in the workplace we have rejected any conclusive presumption that an employer will not discriminate against members of his own race. "*Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group.*" *Castaneda v Partida*, 430 US 482, 499; 97 S Ct 1272, 1282; 51 L Ed 2d 498 (1977). See also *id*., at 514 n 6, 97 S Ct at 1290 n 6 (POWELL, J., joined by BURGER, C.J., and REHNQUIST, J., dissenting). In *Johnson v Transportation Agency, Santa Clara Cty*, 480 US 616; 107 S Ct 1442; 94 L Ed 2d 615 (1987), a male employee claimed that his employer discriminated against him because of his sex when it preferred a female employee for promotion. Although we ultimately rejected the claim on other grounds, we did not consider it significant that the supervisor who made that decision was also a man. See *id*., at 624–625; 107 S Ct, at 1447–1448. If our precedents leave any doubt on the question, *we hold today that nothing in Title VII necessarily bars a claim of discrimination "because of ... sex" merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex.* [Emphasis added.]

Accordingly, pursuant to *Oncale*, it is clear that an individual may pursue a claim for race or gender discrimination in violation of Title VII, even where the plaintiff and the offending

party are of the same race or gender. In *Robinson v Ford Motor Co*, 277 Mich App 146, 152; 744 NW2d 363 (2008), this Court was asked to consider whether the plaintiff could pursue a same-gender, hostile work environment claim against his employer. After reviewing the United States Supreme Court's holding in *Oncale*, as well as the pertinent language of Michigan's CRA, this Court held as follows:

> The CRA contains a phrase identical to that which was interpreted by *Oncale* under title VII. Specifically, MCL 37.2202(1)(a) prohibits, "discriminat[ion] . . . because of . . . sex" in a "term" or "condition" of employment. The language of the CRA does not exclude same-gender harassment claims. Accordingly, we reject defendant's claim that the CRA excludes same-gender, hostile-work-environment claims. [*Robinson*, 277 Mich App at 153.]

Likewise, the CRA prohibits discrimination in employment on the basis of race, and does not contain any language that excludes discrimination claims where the plaintiff, and those alleged to have discriminated against the plaintiff, are of the same race. MCL 37.2202(1)(a).

Plaintiff points to several comments that the trial court made during the course of the hearing on the cross-motions for summary disposition referring to the race and gender of those who selected Faison and Bogle for the EDCB and DOC positions and the demographics of DPS, asserting that they establish that the trial court concluded that members of the same race or gender could not discriminate against each other. However, a close review of the trial court's ruling from the bench confirms that its decision to grant defendants' motion for summary disposition, and to deny plaintiff's motion for summary disposition, was based on its conclusion that plaintiff had not put forth evidence creating a genuine issue of material fact regarding whether the decision to not select her for the positions was in any way related to her gender or race. Specifically, the trial court stated very clearly, "there's no inference of discrimination that can be discerned from[ ]" the record evidence, even when viewed in the light most favorable to plaintiff. The trial court clarified that defendants' decision to not select plaintiff "was clearly a business decision," and that plaintiff's race and gender did not motivate defendants' decision. The trial court also concluded that plaintiff had not withstood the third stage of the burden-shifting analysis, where she had not established that defendants' proffered non-discriminatory reasons for not selecting her were a mere pretext for otherwise unlawful discrimination. In sum, a close review of the trial court's ruling reflects that its decision was grounded in its determination that plaintiff had not produced evidence of unlawful discrimination on the part of defendants, not an improper consideration of a same group inference.

Affirmed.

/s/ Michael J. Riordan
/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto