LYTLE v MALADY

Docket No. 157627. Submitted July 7, 1994, at Grand Rapids. Decided March 6, 1995, at 9:30 A.M. Leave to appeal sought.

Nancy Lytle brought an action in the Muskegon Circuit Court against Michael Malady and Howmet Corporation after she was discharged from employment at Howmet, where Malady was her supervisor. Against Howmet, Lytle alleged unlawful age and gender discrimination under the Civil Rights Act and breach of an employment contract providing for termination for just cause only. Against Malady, Lytle alleged tortious interference with her contractual relationship with Howmet. The court, R. Max Daniels, J., granted summary disposition for Malady and Howmet. Lytle appealed.

The Court of Appeals *held:*

1. Where, as here, an employee is discharged as a result of an economically motivated reduction in force by an employer, a prima facie case and rebuttable presumption of age discrimination under the disparate-treatment theory is established upon a showing that the employee was within the protected class, that the employee was qualified to assume another position with the employer at the time of discharge, and that age was a determining factor in the decision to discharge the employee. To rebut the presumption of disparate treatment, the employer must articulate some legitimate, nondiscriminatory reason for the discharge. Once the employer offers a nondiscriminatory reason, the employee must show that the employer's proffered reason is a mere pretext and that discrimination was more likely the employer's true motivation in discharging the em-

REFERENCES

Am Jur 2d, Wrongful Discharge §§ 1, 93, 102, 103, 120-122, 163, 164, 237.

Modern status of rule that employer may discharge at-will employee for any reason. 12 ALR4th 544.

Right to discharge allegedly "at-will" employee as affected by employer's promulgation of employment policies as to discharge. 33 ALR4th 120.

Liability of corporate director, officer, or employee for tortious interference with corporation's contract with another. 72 ALR4th 492.

ployee. In this case, genuine issues of material fact remain with respect to whether Lytle has established a presumption of age discrimination and has shown that Howmet's proffered reasons for her discharge were a mere pretext for discrimination. The trial court therefore erred in summarily dismissing the age discrimination claim.

2. A prima facie case and rebuttable presumption of gender discrimination is established by a female in connection with the termination of her employment as part of an economically motivated reduction in force by the employer upon a showing by the employee that she was a member of a class entitled to protection under the Civil Rights Act, that she was qualified and applied for a position available at the employer, and that she was rejected under circumstances giving rise to an inference of illegal discrimination. The presumption may be rebutted by the employer if it articulates a legitimate, nondiscriminatory reason for the discharge. If the employer offers a nondiscriminatory reason, the employee must show that the proffered reason is a mere pretext for discrimination. In this case, there are genuine issues of material fact concerning whether Lytle has established a presumption of gender discrimination and has shown that Howmet's proffered reasons for her discharge were a mere pretext for discrimination. The trial court therefore erred in summarily dismissing the gender discrimination claim.

3. Lytle's allegations give rise to a genuine issue of material fact with regard to whether policy statements in Howmet's employee handbook and oral assurances of job security created a legitimate expectation of just-cause employment. Bona fide economic reasons are just cause for discharge. However, an employer may not use economic necessity as a pretext for unlawful discrimination. Where, as in this case, the parties dispute the genuineness of the claimed economic necessity, the question of just cause is one for the trier of fact. The trial court erred in summarily dismissing the claim of breach of a just-cause employment contract.

4. Lytle's allegations do not sufficiently establish that Malady tortiously interfered with her contractual relationship with Howmet in the absence of any claims that Malady acted outside the scope of his authority and that he acted for personal benefit rather than for the benefit of his employer. The trial court did not err in summarily dismissing the claim of tortious interference with a contractual relationship.

Affirmed in part, reversed in part, and remanded.

1. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — AGE — WORK-FORCE REDUCTIONS.

An employee discharged as part of an economically motivated

reduction in force by the employer establishes a prima facie case and rebuttable presumption of unlawful age discrimination under the Civil Rights Act upon a showing that the employee was within the protected class, that the employee was qualified to assume another position with the employer at the time of discharge, and that age was a determining factor in the decision to discharge the employee; the employer can rebut the presumption by articulating some legitimate, nondiscriminatory reason for discharge; if the employer articulates a nondiscriminatory reason, the employee must then show that the proffered reason is a mere pretext for discrimination (MCL 37.2202[1][a]; MSA 3.548[202][1][a]).

2. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — GENDER — WORK-FORCE REDUCTIONS.

An employee discharged as part of an economically motivated reduction in force by the employer establishes a prima facie case and rebuttable presumption of unlawful gender discrimination under the Civil Rights Act upon a showing that the employee was a member of a class entitled to protection under the act, that the employee was qualified and applied for a position available at the employer, and that the employee was rejected under circumstances giving rise to an inference of illegal discrimination; the employer can rebut the presumption by articulating some legitimate, nondiscriminatory reason for discharge; if the employer articulates a nondiscriminatory reason, the employee must then show that the proffered reason is a mere pretext for discrimination (MCL 37.2202[1][a]; MSA 3.548[202][1][a]).

3. MASTER AND SERVANT — EMPLOYMENT CONTRACTS.

Employment contracts for an indefinite period are presumed to be terminable at the will of either party for any reason or for no reason; this presumption may be rebutted where the employee establishes the existence of an explicit or implied-in-fact promise of employment terminable for just cause only or presents evidence of employer policies or procedures creating a legitimate expectation of employment terminable for just cause only.

4. MASTER AND SERVANT — EMPLOYMENT CONTRACTS.

An employer's written policy statements that create legitimate expectations in employees of employment terminable for just cause only may be unilaterally modified by an employer upon reasonable notice of the change to affected employees.

5. TORTS — TORTIOUS INTERFERENCE WITH CONTRACTS — EMPLOYMENT CONTRACTS.

An employee claiming tortious interference by a supervisor with

the employee's contractual relationship with the employer must show that the supervisor acted beyond the scope of the supervisor's authority and acted for personal benefit rather than in the interest of the employer.

*Bott & Spencer, P.C.* (by *Timothy J. Bott*), for the plaintiff.

*Varnum, Riddering, Schmidt & Howlett* (by *Joseph J. Vogan*), for the defendants.

Before: HOLBROOK, JR., P.J., and MURPHY and J. C. KINGSLEY,* JJ.

HOLBROOK, JR., P.J. In this wrongful discharge case, plaintiff's complaint alleged three counts against defendant Howmet Corporation: age discrimination under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, gender discrimination under the Civil Rights Act, and breach of a contract providing for termination for just cause only. The complaint also alleged tortious interference with contractual relations against defendant Michael Malady. Following some discovery, defendants moved separately for summary disposition, which was granted by the trial court on all counts. Plaintiff appeals as of right, and we affirm in part, reverse in part, and remand.

I

In 1973, Howmet, a manufacturer of aircraft engine parts, hired plaintiff as a general clerk. Following a succession of positive performance appraisals and promotions, she was promoted in 1979 by her supervisor, John Ozar, to employment manager of the human resources department of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Howmet's Whitehall division. When defendant Malady became plaintiff's supervisor in 1987, a personality conflict arose, and in 1989, on Malady's recommendation, she was demoted to human resources specialist. A younger, allegedly less qualified man was promoted to replace her.

As a result of declines in military spending and a downturn in the commercial airline industry, Howmet instituted a series of reductions in its work force between 1988 and 1991. In August 1991, William Roof, director of the Whitehall human resources department, was directed to cut his 1992 department budget by fifteen percent (approximately $439,000). In November 1991, Roof eliminated four positions in the human resources department, including plaintiff's position as human resources specialist, and reassigned her job duties to other persons within the department. Roof decided to eliminate plaintiff's position because her main responsibilities involved the hourly workers who bore the brunt of the downsizing. Plaintiff's "termination evaluation" indicated that Howmet would rehire plaintiff in the event a nonsupervisory, administrative position became open.

II

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. In reviewing a grant of summary disposition, we must independently determine, giving the benefit of doubt to the nonmovant, whether the movant would have been entitled to judgment as a matter of law. *Adkins v Thomas Solvent Co*, 440 Mich 293, 302; 487 NW2d 715 (1992); *Featherly v Teledyne Industries, Inc*, 194 Mich App 352, 357; 486 NW2d 361 (1992). This Court reviews a summary

disposition determination de novo as a question of law. *Borman v State Farm Fire & Casualty Co,* 198 Mich App 675, 678; 499 NW2d 419 (1993), aff'd 446 Mich 482; 521 NW2d 266 (1994).

### III

Plaintiff asserts that the trial court erred in finding that no genuine issue of material fact existed with respect to plaintiff's prima facie case of age discrimination and in granting Howmet summary disposition pursuant to MCR 2.116(C) (10). We agree and reverse.

### A

Plaintiff's claim of age discrimination is based upon the Civil Rights Act, which provides in pertinent part:

> (1) An employer shall not do any of the following:
> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . age . . . . [MCL 37.2202; MSA 3.548(202).]

This Court has held that federal precedent, while not binding, is persuasive authority in interpreting and applying the Civil Rights Act. *Featherly, supra* at 357-358; *Slayton v Michigan Host, Inc,* 144 Mich App 535, 548, n 7; 376 NW2d 664 (1985).

### B

An age discrimination claim can be based on two theories: (1) disparate treatment, which requires a showing of either a pattern of intentional

discrimination against protected employees, e.g.,
employees aged forty to seventy years, or against
an individual plaintiff; or (2) disparate impact,
which requires a showing that an otherwise fa-
cially neutral employment policy has a discrimina-
tory effect on members of a protected class.[1] See
*Farmington Ed Ass'n . v Farmington School Dist,*
133 Mich App 566; 351 NW2d 242 (1984). In this
case, plaintiff has presented competent evidence
only of a disparate treatment claim.

A plaintiff can establish a claim of disparate
treatment with sufficient direct or indirect evi-
dence of intentional discrimination. Direct evi-
dence of disparate treatment would be evidence
that, if believed, would prove the existence of the
employer's illegal motive without benefit of pre-
sumption or inference. *Matras v Amoco Oil Co,*
424 Mich 675, 683; 385 NW2d 586 (1986). That is
not the usual case, however, because an employer
is rarely so blatant as to announce its illegal
motives. Instead, the usual case must be proven by
indirect (circumstantial or statistical) evidence. In
light of this reality, courts have created special
rules of proof in order "to sharpen the inquiry into
the elusive factual question of intentional discrimi-
nation." *Texas Dep't of Community Affairs v Bur-
dine,* 450 US 248, 255, n 8; 101 S Ct 1089; 67 L Ed
2d 207 (1981).

A prima facie case of age discrimination varies
with differing factual situations. *Matras, supra* at
684. Where, as here, a plaintiff is discharged as a
result of an employer's economically motivated
reduction in force (RIF), a prima facie case of
disparate treatment requires an initial showing, by

---

[1] We note that a growing number of decisions from this Court have
confused these two theories of discrimination with the differing meth-
ods of proving each theory. For example, intentional discrimination is
not a separate theory but rather another name for the disparate
treatment theory.

a preponderance of the evidence, that (1) the plaintiff was within the protected class and was discharged or demoted, (2) the plaintiff was qualified to assume another position at the time of discharge or demotion, and (3) age was "a determining factor" in the employer's decision to discharge or demote the plaintiff.[2] *Matras, supra; McDonnell Douglas Corp v Green,* 411 US 792, 802; 93 S Ct 1817; 36 L Ed 2d 668 (1973). Because plaintiff has presented no direct evidence of age discrimination by Howmet, she must attempt to create through indirect evidence a rebuttable presumption of discrimination.[3] In a RIF case, it is insufficient for a plaintiff to show merely that the employer retained a younger employee while discharging an older employee. *Matras, supra* at 684; *Featherly, supra* at 359.

Once established, a prima facie case creates a rebuttable presumption of disparate treatment. *Burdine, supra* at 252-253. At this point, the burden of production shifts to the defendant—as opposed to the burden of persuasion that never shifts

[2] Thus, in the usual non-RIF case, a plaintiff can establish a prima facie case of disparate treatment by a rudimentary showing that (1) the plaintiff was within the protected class, (2) the plaintiff was qualified for the job in question, and (3) the plaintiff was replaced by a substantially younger person. *McDonnell Douglas Corp v Green,* 411 US 792, 802; 93 S Ct 1817; 36 L Ed 2d 668 (1973). In a RIF case, however, a plaintiff's inability to prove that the plaintiff was "replaced" by a younger employee is not necessarily fatal to the claim. See *Matras, supra* at 708 (RILEY, J., dissenting). See also *Billett v CIGNA Corp,* 940 F2d 812, 816, n 3 (CA 3, 1991). Instead, the plaintiff must produce sufficient evidence from which a trier of fact could reasonably conclude that the employer intended to discriminate on the basis of age in reaching its decision. See, e.g., *Williams v General Motors Corp,* 656 F2d 120 (CA 5, 1981). Accordingly, the trial court's focus in this case on the fact that plaintiff was not "replaced" was error.

[3] Where direct evidence is offered to prove that an employer discriminated, the *McDonnell Douglas* burden-shifting analysis is inapplicable and the case should proceed as an ordinary civil matter. See *Trans World Airlines, Inc v Thurston,* 469 US 111, 121; 105 S Ct 613; 83 L Ed 2d 523 (1985).

—to rebut the presumption of disparate treatment by articulating (not proving) "some legitimate, nondiscriminatory reason" for the adverse employment decision against the plaintiff. *Id.* at 253-258. The defendant's explanation must be clear and reasonably specific to afford the plaintiff "a full and fair opportunity" to demonstrate pretext. *Id.* at 256.

If the defendant carries its burden of production, the presumption of discrimination is dispelled, and the factual inquiry proceeds to a new level of specificity. *Id.* at 255. See also *St Mary's Honor Center v Hicks,* 506 US —; 113 S Ct 2742; 125 L Ed 2d 407, 422 (1993). The plaintiff's burdens of production and persuasion merge, requiring her to prove by a preponderance of the evidence not only that the defendant's proffered reasons are a mere pretext but also that illegal discrimination was more likely the defendant's true motivation in discharging or demoting the plaintiff. *Id., Fuentes v Perskie,* 32 F3d 759, 764 (CA 3, 1994); *Bodenheimer v PPG Industries, Inc,* 5 F3d 955, 957 (CA 5, 1993).

At this juncture, we note that there is a crucial distinction between a plaintiff's prima facie case for purposes of surviving a summary disposition motion and a prima facie case sufficient to persuade a trier of fact at trial with regard to the ultimate question whether a defendant intentionally discriminated against the plaintiff. While the latter requires a plaintiff to prove her case to the trier of fact by a preponderance of the evidence, the former does not require her to go so far. *Meeka v D & F Corp,* 158 Mich App 688, 694; 405 NW2d 125 (1987); *Fuentes, supra* at 763-764. Neither a trial court nor this Court on appellate review of a summary disposition determination need conduct a minitrial to determine whether the

plaintiff has met her burden of presenting a prima facie case by a preponderance of the evidence. Instead, for the plaintiff to survive a summary disposition motion, she need only tender specific factual evidence that could lead a reasonable jury to conclude that the defendant's proffered reasons are a pretext for age discrimination. *Bodenheimer, supra* at 958; *Hicks, supra,* 125 L Ed 2d 416. Thus, the plaintiff must establish, either directly or indirectly, the existence of a genuine issue of material fact that the defendant's proffered reasons are unworthy of credence, *and* that illegal age discrimination was more likely the defendant's true motivation in discharging or demoting her. *Id.; Featherly, supra* at 362-363. Cf. *Bouwman v Chrysler Corp,* 114 Mich App 670, 678-679; 319 NW2d 621 (1982) (directed verdict).

C

Two issues are presented on appeal, both arising naturally from the *McDonnell Douglas* burden-shifting analysis: whether plaintiff created a genuine issue of material fact with regard to the existence of a prima facie case of discrimination by indirect evidence; and, if so, whether plaintiff created a genuine issue of material fact concerning whether Howmet's proffered reasons were a mere pretext for age discrimination.

1

In this case, plaintiff's prima facie case is based solely on circumstantial evidence. She alleges that in January 1989, defendant Malady demoted her from employment manager to human resources specialist, while simultaneously promoting Walter

Boczkaja to employment manager.[4] Boczkaja was younger, had less seniority with Howmet, less experience in the area of human resources, and had been trained by plaintiff during her tenure as employment manager. Plaintiff also alleges that, approximately six weeks before she was discharged in 1991 at age forty-four, Howmet hired Andrea Achterhoff, age thirty-one, as human resources specialist for its Operhall Research Center (ORC), a division separate from the Whitehall division where plaintiff had worked. Plaintiff also alleges that, as part of an effort by Howmet to implement a new manufacturing approach, Jeff Billingsley, a training and development manager, was transferred from the corporate human resources department to Whitehall's human resources department. Both Achterhoff and Billingsley were younger than plaintiff, had less seniority, and, according to plaintiff, performed duties that she could have assumed considering her nineteen years of experience at Howmet.

We find plaintiff's allegations, although meager, to be sufficient to create a genuine issue of material fact that age was a determining factor in her discharge. Because this is a RIF case, Howmet's decision to discharge qualified, older employees is not inherently suspicious but rather readily explainable in terms of its economic situation. Standing alone, the fact of such discharges does not warrant shifting the burden of production to Howmet to justify its decision. *Featherly, supra* at 355. Here, however, we find that Howmet's retaining and hiring of younger, less senior, and allegedly less qualified employees, while discharging plain-

---

[4] Howmet's claim that plaintiff's 1989 demotion was unrelated to her subsequent discharge nearly three years later is unsupported by the evidence. A reasonable inference can be made that these acts constituted a continuing violation of the Civil Rights Act. *Sumner v Goodyear Tire & Rubber Co,* 427 Mich 505; 398 NW2d 368 (1986).

tiff, "exude[s] that faint aroma of impropriety" sufficient to create a rebuttable presumption of disparate treatment. *Thornbrough v Columbus & Greenville R Co,* 760 F2d 633, 644 (CA 5, 1985).

2

In rebuttal, Howmet asserts that the elimination of plaintiff's position as human resources specialist was justified because of a projected downturn in sales and a concomitant reduction in the hourly work force for which plaintiff was primarily responsible. Howmet further asserts that plaintiff was not replaced but that her duties were reassigned to various other employees. Howmet further claims that the hiring of Achterhoff for the position of human resources representative at ORC was irrelevant to plaintiff's discharge because ORC is a separate division with a separate budget over which plaintiff's supervisors had no control. In any event, Howmet asserts that Achterhoff was qualified for the position and that plaintiff did not apply. At deposition, defendant Malady stated that one of the reasons he discharged plaintiff was because of concerns he had regarding her supervisory ability.

To resurrect her prima facie case at the third stage of proofs, plaintiff asserts that Howmet's proffered reasons are a mere pretext for age discrimination. Although Howmet's RIF may have been justified, plaintiff has produced documentary evidence to support an inference that Howmet's true motivation in discharging her was age discrimination. See *Featherly, supra* at 355. Plaintiff presented evidence that she was capable of assuming the duties given to Achterhoff, and that it was not reasonable to expect her to apply for the ORC position because at that time she was not aware of

her imminent discharge. Moreover, Howmet has failed to rebut plaintiff's claim that its decision to discharge her and retain Boczkaja, who was younger, with less seniority and less experience, was at least partially premised on plaintiff's age. We conclude that the hiring of Achterhoff and the retention of Boczkaja, in the face of plaintiff's discharge, could reasonably lead to an inference that Howmet consciously refused to consider retaining or relocating plaintiff because of her age. Finally, in light of plaintiff's many years of positive performance appraisals and several promotions, she has presented evidence supporting an inference that Malady's claim that she was not supervisory material was a mere pretext.

Viewing the evidence in a light most favorable to plaintiff and drawing all reasonable inferences in her favor, we find that she has raised a genuine issue of material fact whether Howmet's proffered reasons for her discharge were a mere pretext for age discrimination. Accordingly, we reverse the trial court's order of summary disposition of this claim.

IV

Plaintiff next asserts that the trial court erred in finding that no genuine issue of material fact existed with respect to her prima facie case of gender discrimination and in granting Howmet summary disposition pursuant to MCR 2.116(C) (10). We agree and reverse.

A

The essence of a gender discrimination claim is that for the same or similar conduct a female plaintiff was treated differently than a similarly

situated male employee. *Betty v Brooks & Perkins,* 446 Mich 270, 281; 521 NW2d 518 (1994); *Marsh v Dep't of Civil Service (After Remand),* 173 Mich App 72; 433 NW2d 820 (1988). To establish a prima facie case of gender discrimination under a disparate treatment theory, a female plaintiff is required to show that she was a member of a class entitled to protection under the Civil Rights Act, she was qualified and applied for an available position, and she was rejected under circumstances giving rise to an inference of illegal discrimination. *Pomranky v Zack Co,* 159 Mich App 338, 343-344; 405 NW2d 881 (1987). Moreover, as stated in Part III, the plaintiff's heightened burden of proof in a RIF case requires a showing that gender was a determining factor in the defendant's employment decision. *Reisman v Regents of Wayne State Univ,* 188 Mich App 526, 539-541; 470 NW2d 678 (1991) (racial discrimination). If, in response to a prima facie case of discrimination, the defendant articulates a legitimate, nondiscriminatory reason for its decision, the plaintiff has the burden of showing that the proffered reasons are a mere pretext for discrimination. *Id.*

B

In this case, defendant Malady became plaintiff's supervisor in March 1987 and a personality conflict quickly erupted. Plaintiff cited the following incident, which she described at deposition:

> In '87, the only other thing I can really think of, and it sounds real silly, but shortly after Michael [Malady] started there we had an open house—and I remember it very plain, and he came to my office and said, well, I want you girls to wear dresses to the open house. I said, Michael, I don't want to wear a dress to the open house. We're out on the

grass. We're walking around and slopping hotdogs
and eating ice cream and I don't want to look like
a snot. I said, besides, I don't even have a dress I
can wear to a picnic, and he said, well, here's your
paycheck, buy one. Well, I didn't wear one and I
think right then and right there is where our
trouble started. I mean, I honestly do.

In June 1987, and again in September 1987, plain-
tiff's performance was appraised by Malady, result-
ing in evaluations more critical than those she had
received under previous supervisors.

In January, 1989, after further confrontations,
Malady demoted plaintiff and simultaneously pro-
moted Walter Boczkaja to employment manager.
As stated previously, Boczkaja had less seniority
with Howmet, less experience in the area of hu-
man resources, and had been trained by plaintiff
during her tenure as employment manager. In her
brief opposing Howmet's motion for summary dis-
position, plaintiff alleges that "Mr. Malady had
difficulty in getting along with women in positions
of authority."

Plaintiff's allegations permit an inference that
her discharge was not merely the result of a
personality conflict with Malady. See *Coleman-Ni-
chols v Tixon Corp*, 203 Mich App 645, 651; 513
NW2d 441 (1994). Viewing the evidence in a light
most favorable to plaintiff and drawing all reason-
able inferences in her favor, we find that she has
raised a genuine issue of material fact with respect
to a prima facie case of gender discrimination, i.e.,
that she was treated more harshly than similarly
situated male employees. Additionally, plaintiff
also has raised an issue of fact whether Howmet's
proffered reasons for her demotion and subsequent
discharge were a mere pretext for gender discrimi-
nation. Thus, we reverse and remand for further

proceedings regarding plaintiff's gender discrimination claim.

### V

Plaintiff next asserts that the trial court erred in finding that she had failed to establish a legitimate expectation of employment terminable for just cause only, and granting summary disposition to Howmet pursuant to MCR 2.116(C)(10). Plaintiff further asserts that the trial court erred to the extent that it held that plaintiff had failed to rebut Howmet's alleged economic justification for discharge.

### A

Employment contracts for an indefinite period are presumed to be terminable at the will of either party for any reason or for no reason at all. *Rood v General Dynamics Corp*, 444 Mich 107, 116; 507 NW2d 591 (1993). To rebut this presumption, an employee must establish the existence of an explicit or implied-in-fact promise of just-cause employment or present evidence of employer policies or procedures creating a "legitimate expectation" of just-cause employment. *Id.* at 117-118.

In this case, we find that plaintiff's allegations give rise to a question of fact with regard to whether policy statements in Howmet's employee handbook and oral assurances of job security were sufficient to create in plaintiff a legitimate expectation of just-cause employment. In 1973, when plaintiff was initially hired by Howmet, she was given a handbook containing the following provision:

No employee will be terminated without proper

cause or reason and not until management has made a careful review of all facts.

In a separate section, the handbook provided the following contract disclaimer:

> The contents of this booklet are not intended to establish, and should not be interpreted to constitute any contract between [defendant Howmet] and any employee or group of employees.

In *Rood, supra* at 140-141, our Supreme Court explained:

> Consistent with *Toussaint* [*v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980)] and *Renny* [*v Port Huron Hosp,* 427 Mich 415; 398 NW2d 327 (1986)], we therefore hold that, in all claims brought under the legitimate expectations theory of *Toussaint,* the trial court should examine employer policy statements, concerning employee discharge, if any, to determine, as a threshold matter, whether such policies are reasonably capable of being interpreted as promises of just-cause employment. If the employer policies are incapable of such interpretation, then the court should dismiss the plaintiff's complaint on defendant's motion for summary disposition. MCR 2.116(C)(10). If, however, the employer's policies relating to employee discharge are capable of two reasonable interpretations, the issue is for the jury.

We find that Howmet's explicit policy statement forbidding discharge except for just cause could have reasonably created a legitimate expectation of just-cause employment, notwithstanding the absence of any express contract between Howmet and its employees. *Rood, supra* at 140. To hold otherwise and find that Howmet's contract disclaimer obviated its just-cause policy statement

would create an illusory promise of just-cause employment to its employees yet permit Howmet to reap all the benefits of improved employee morale as a result of the promise. See *Rowe v Montgomery Ward & Co, Inc*, 437 Mich 627, 655; 473 NW2d 268 (1991); *Toussaint, supra* at 619.

B

Our finding that Howmet's policy statement was reasonably capable of being interpreted as a promise of just-cause employment does not end the matter. We must next determine whether the nature of the employment relationship was changed unilaterally by Howmet with subsequent distribution of a disclaimer providing for employment at will. We find in plaintiff's case that it was not.

In 1981, plaintiff's subordinates in the human resources department were instructed to place stickers on employee handbooks disclaiming just-cause employment. The disclaimer provided:

> The Company reserves the right to terminate employees without assigning cause; therefore, the employee serves at the will of the employer.

Upon becoming aware of the disclaimer, plaintiff inquired of Mason Archer,[5] supervisor of Howmet's employee benefits department, whether it applied to her, and Archer replied that it only applied to new employees. Defendant Howmet concedes that plaintiff was never notified directly that the disclaimer applied to her.

---

[5] According to personnel documents, Mason Archer was plaintiff's immediate supervisor from 1973 until 1979, when he was laterally transferred "to the area of supervising Employee Benefits and Equal Employment Opportunity." At that time, plaintiff was promoted to Employment Manager, Archer's former position.

Howmet asserts that plaintiff is bound by the change in policy because she was aware of the disclaimer being placed in employee handbooks. An employer's written policy statements, which create legitimate expectations in an employee of just-cause employment, may be unilaterally modified provided that the employer gives affected employees reasonable notice of the change. *Rowe, supra* at 648 (RILEY, J.), 662 (BOYLE, J.) (an employee can "no longer harbor any legitimate expectations of a discharge-for-cause policy," once the employee becomes aware of a change in policy, despite the absence of formal assent); *In re Certified Question,* 432 Mich 438, 441, 456-457; 443 NW2d 112 (1989). Reasonable notification does not necessarily entail actual notice, but only that the method of notification be uniform and reasonable. *Grow v General Products, Inc,* 184 Mich App 379, 386-387; 457 NW2d 167 (1990). Here, Howmet had human resources department employees insert stickers in handbooks apparently intended for new employees. There is no evidence that the change in policy was otherwise distributed or announced to current employees, and Howmet has conceded that plaintiff was not notified directly of the change in policy.[6]

Howmet nonetheless asserts that plaintiff's knowledge of the at-will disclaimer operated to dispel any legitimate expectation of just-cause employment. A legitimate expectation of just-cause employment may be created by statements of management personnel, not by mere statements of fellow employees. *Gonyea v Motor Parts Federal Credit Union,* 192 Mich App 74, 83-84; 480 NW2d

---

[6] We further note that, in the section entitled "Your Handbook" of the original handbook given to plaintiff, employees were assured as follows: "The procedures, benefits and practices outlined here may be changed from time to time. You will be advised of such changes as they are put into effect."

297 (1991). Similarly, any changes in an employer's employment policy must be prescribed by management personnel. Here, upon becoming aware of the at-will disclaimer, plaintiff was orally assured by Mason Archer that the new policy did not apply to her. Because Archer was supervisor of Howmet's employee benefits department, we find it reasonable to infer that employees, including plaintiff, would rely on Archer's statements regarding employee relations, notwithstanding that plaintiff described Archer as a "coemployee" rather than her manager or supervisor. Accordingly, because Howmet failed to give reasonable notice of the change in policy, we conclude that plaintiff's legitimate expectation of just-cause employment remained intact.

C

Notwithstanding the existence of an enforceable just-cause employment policy, Howmet asserts that just cause was present in this case in the form of its economically motivated RIF.

Bona fide economic reasons are just cause for discharge. *McCart v J Walter Thompson USA, Inc,* 437 Mich 109, 114; 469 NW2d 284 (1991). However, an employer may not use economic necessity as a pretext for unlawful discrimination. *Id.* at 115. When the parties dispute the genuineness of the economic necessity, the question of just cause is one for the trier of fact. *Ewers v Stroh Brewery Co,* 178 Mich App 371, 378-379; 443 NW2d 504 (1989). Here, plaintiff has presented documentary evidence that Howmet was not in an economic downturn during this period and that in reality its sales and net income were increasing and that it continued to hire personnel while it was discharging current employees. Giving the benefit of every

reasonable doubt to plaintiff, we find that she has raised a genuine issue of material fact concerning whether Howmet's proffered economic justification was a mere pretext for discrimination, and this issue is best left for a jury to resolve. *McCart, supra* at 115-116; *Ewers, supra* at 373-374. Thus, the trial court erred in summarily dismissing plaintiff's claim of breach of a contract of just-cause employment.

## VI

Plaintiff claims that the trial court erred in granting summary disposition to defendant Malady on the basis that she had failed to raise a genuine issue of material fact with respect to a prima facie case against Malady for tortious interference with her employment at Howmet. We disagree.

To maintain a cause of action for tortious interference with contractual relations, a plaintiff bears a heavy burden of showing that the defendant, as a corporate agent or officer, was acting outside the scope of his authority by interfering with the plaintiff's contractual relations without justification. *Coleman-Nichols, supra* at 657; *Bradley v Phillip Morris, Inc,* 194 Mich App 44, 50; 486 NW2d 48 (1992), vacated in part on other grounds 440 Mich 870 (1992). A corporate agent or officer may not be held liable where he acts on his employer's behalf, rather than for personal benefit. *Id.* See also *Feaheny v Caldwell,* 175 Mich App 291, 306; 437 NW2d 358 (1989).

Here, we agree with the trial court that plaintiff has presented insufficient evidence of any affirmative act by Malady to corroborate a claim of tortious interference. Plaintiff's only such evidence is that Malady concurred with William Roof's deci-

sion to discharge plaintiff; however, this does not rise to the level of an affirmative act of interference with plaintiff's contractual relations. *Coleman-Nichols, supra.* Moreover, plaintiff has failed to allege any personal benefit reaped by Malady because of plaintiff's discharge, other than not having to deal with her anymore. Accordingly, we affirm the trial court's order granting summary disposition to defendant Malady of this claim.

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings regarding plaintiff's breach of a just-cause employment contract and Civil Rights Act claims against defendant Howmet. We do not retain jurisdiction.