107 F.3d 871
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Janet RINGL, Plaintiff-Appellant,
v.
AMERITECH CORPORTION; Ameritech Services, Inc. Bell
Telephone Co., Defendants-Appellees.
 No. 96-1034.
 United States Court of Appeals, Sixth Circuit.
 Feb. 12, 1997.
 
 Before: MARTIN, Chief Judge; SUHRHEINRICH and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Janet Ringl appeals the order of the district court granting summary judgment in favor of Ameritech Services, Inc., in this diversity action arising from Ringl's discharge and subsequent claims of gender discrimination, sexual harassment, age discrimination, breach of contract, intentional infliction of emotional distress, and defamation.
 
 I. Procedural History
 
 2
 Ringl began working for Michigan Bell in 1964 and was promoted to management rank in 1977 where she consistently received merit raises and bonuses. As a result of several business changes. Ringl was transferred to Ameritech Services, Inc., where she eventually fell under the supervision of Mr. Marty Barnes, in January 1991. During the time she was under Barnes's supervision, Ringl claims that she was subjected to numerous acts of gender discrimination and sexual harassment, all of which resulted in her being denied a merit bonus to her in 1991. Ringl further claims that she was placed "at risk" for termination during Ameritech's reduction in force program as a result of her being denied a merit bonus the previous year.
 
 
 3
 In August of 1992, Ameritech announced a "reduction in force" program in which it would reduce its management workforce by approximately fifteen percent. Ameritech adopted a two-step plan to identify those managers who would be terminated. First, Ameritech classified the lowest thirty percent of management performers, for each salary grade, based on merit bonuses paid out in 1990 and 1991. Second, Ameritech engaged in "ranking sessions," where the designated thirty percent were ranked against each other, based on presentations by management supervisors. The results of the ranking sessions were then forwarded to Ameritech's vice-presidents and president for the final decision. As a result of this process, Ringl and seven hundred and twenty-eight other managers were terminated on November 9, 1992.
 
 
 4
 After her termination, Ringl filed suit in the United States District Court for the Eastern District of Michigan, alleging gender discrimination, sexual harassment, age discrimination, breach of contract, intentional infliction of emotional distress, and defamation. On November 17, 1995, the district court granted Ameritech's motion for summary judgment, concluding that, for each of Ringl's causes of action, no material issues of fact were at issue and that Ameritech was entitled to judgment as a matter of law.
 
 II. Analysis
 
 5
 Summary judgment is appropriate where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). On appeal, this Court reviews the grant of summary judgment de novo, making all reasonable inferences in favor of the non-moving party. E.E.O.C. v. University of Detroit, 904 F.2d 331 (6th Cir.1990). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Accordingly, the nonmoving party may not simply rest on its pleadings to avoid summary judgment; the nonmoving party must support its claim with some probative evidence. Kraft v. United states, 991 F.2d 292, 296 (6th Cir.), cert. denied, 114 S.Ct. 467 (1993).
 
 1. Gender Discrimination
 
 6
 Ringl brought her gender discrimination action under the Michigan Eliot-Larsen Civil Rights Act, M.C.L. § 37.2201 et seq. Under Michigan law, a showing of either intentional discrimination or disparate treatment will create a prima facie case of gender discrimination. Coleman-Nichols v. Tixon Corp., 203 Mich.App. 645, 651 (1994). Intentional discrimination requires that the plaintiff show (1) that she was a member of a protected class, (2) that she was discriminated against with respect to employment, (3) that the defendant was predisposed to discriminate against persons in the protected class, and (4) that the defendant acted upon that predisposition when making the employment decision. Id. Disparate treatment requires a showing that the plaintiff was a member of a protected class, and that she was treated differently than a man for the same conduct or performance. Id.
 
 
 7
 Ringl claims that Barnes discriminated against her by failing to award her bonus in 1991, in refusing to provide her with adequate resources, and in failing to invite her to activities outside the work environment, such as fishing trips and after-hours drinks.
 
 
 8
 Even if we are to assume that Ringl has raised a genuine issue of material fact as to the first three elements of an intentional discrimination claim, she has failed to offer sufficient evidence that Barnes acted upon his alleged predisposition in making an employment decision respecting her. Although Barnes provided evaluation input for seven employees in 1991. Ringl was the only one of the seven who did not receive a bonus. Half of the remaining employees who did receive a bonus were women, and the individual who received the largest bonus was a woman. Additionally, Ameritech offered unrebutted evidence that other women had been invited by Barnes to attend fishing trips and to have drinks after hours. With regard to Ringl's proof of insufficient resources, Ringl submitted no evidence that she was similarly situated to other managers who did not receive additional resources. Business leaders are often called on to allocate resources in the most efficient and productive manner, so as to maximize the company's ability to compete in the marketplace. Decision-makers allocate resources based on any number of objective and subjective criteria. Thus, to say that a particular decision was rendered improperly on the basis of gender requires at least some showing that other factors were not considered. In this case, because Ringl has not offered any probative evidence that she was similarly situated to the managers who received additional resources, no reasonable trier of fact could conclude that Barnes based his decision on gender and not a combination of other proper factors.
 
 
 9
 Therefore, even if we were to assume that a genuine issue of material fact existed as to all other elements of Ringl's claim, no reasonable trier of fact could conclude that the evidence produced by Ringl establishes that Barnes acted on his alleged animus toward women in making employment decisions.
 
 
 10
 With regard to her gender discrimination claims based on a disparate treatment theory, Ringl is clearly a member of a protected class. As support for the second element, Ringl claims that she was given inadequate resources, that she was not invited to after-work activities, and that she was denied a bonus in 1991. As stated above, however, Ringl has failed to allege that she was similarly situated to those male individuals who were allegedly treated differently. See Schultes v. Naylor, 195 Mich.App. 640, 645 (1992). For example, Ringl has not alleged that she performed as well, or was as qualified as the men who received bonuses in 1991. Additionally, Ringl has failed to allege that she was similarly situated with the men who allegedly received additional resources. Finally, in light of Barnes' invitations to other women to attend after-work activities, Ringl has failed to establish that she was denied an invitation because of her gender.
 
 
 11
 We are convinced that no genuine issue of material fact exists, and that Ameritech is entitled to judgment as a matter of law, with regard to Ringl's gender discrimination claim. Therefore, the district court properly granted summary judgment to Ameritech with regard to Ringl's gender discrimination claim.
 
 2. Sexual Harassment
 
 12
 To establish a claim of sexual harassment under Michigan law based on a hostile work environment theory, a plaintiff must establish the following: (1) that the employee was a member of a protected group, (2) that the employee was subjected to communication or conduct on the basis of sex, (3) that the employee was subjected to unwelcome sexual conduct or communication, (4) that the unwelcome sexual conduct or communication was intended to, or in fact did, substantially interfere with the employee's employment, or created an intimidating, hostile, or offensive work environment, and (5) respondeat superior. Radtke v. Everett, 442 Mich. 368, 382-83 (1993).
 
 
 13
 Ringl points to four incidents that she claims created a hostile work environment. On one occasion, Ringl claims to have overheard Barnes comment that two women from Michigan, who worked in a different department, constantly complained about the work that Barnes' group--including Ringl--performed. On another occasion, Barnes commented to a male colleague that a woman making a presentation during a meeting was attractive. During yet another meeting, Barnes donned a woman's scarf and informed those in attendance that they could voice complaints without repercussions, so long as they wore the scarf. Finally, Ringl claims that Barnes generally ignored comments and input from women even though he listened intently to the suggestions made by male managers.
 
 
 14
 The incidents cited by Ringl fall short of establishing a hostile work environment. It is undisputed that the communications constituting the first two incidents were not directed toward Ringl, nor did they refer to her in any way. Additionally, the "scarf incident" did not create "an intimidating, hostile, or offensive work environment." Undisputed evidence offered by Ameritech indicates that the meeting in which the "scarf incident" occurred was going badly and that, as a management tactic, Barnes searched for any item which, when possessed by a member of the group, would allow the possessor to voice complaints without repercussions. The record also indicates that Barnes initially looked for a man's hat and used a woman's scarf only after no hat could be found, and after a woman colleague offered the scarf. Furthermore, it is undisputed that Ringl did not participate in the exercise of donning the scarf and voicing complaints.
 
 
 15
 Even when considered collectively, no reasonable trier of fact could conclude that the evidence produced by Ringl establishes a hostile work environment. Accordingly, the district court did not err in granting summary judgment to Ameritech on Ringl's sexual harassment claim.
 
 3. Age Discrimination
 
 16
 Ringl next claims that her termination constitutes age discrimination under either a disparate treatment or a disparate impact theory. Under Michigan law, a prima facie case of disparate treatment with regard to an age discrimination claim requires a showing (1) that the plaintiff was within a protected class, (2) that the plaintiff was qualified to assume another position at the time of discharge, and (3) that the plaintiff's age was a determining factor in the employer's decision to discharge the plaintiff. Lytle v. Malady, 209 Mich.App. 179, 186 (1995).
 
 
 17
 Here, neither party disputes that Ringl was a member of a protected class and that she was qualified to assume another position at the time for her discharge. As proof that age was the determining factor of her discharge, Ringl claims that her job responsibilities were transferred to a younger man. However, under Michigan law, "[i]n a [reduction in force] case, it is insufficient for plaintiff to show merely that the employer retained a younger employee while discharging an older employee." Id. at 186. Instead, where an employer lays off employees for economic reasons, a prima facie case of age discrimination requires "sufficient evidence on the ultimate question--whether age was a determining factor in the decision to discharge the older protected employee." Matras v. Amoco Oil Co., 424 Mich. 675 (1986).
 
 
 18
 As further proof that age was a determining factor in her discharge, Ringl points to a statement made by Jim Goetz, who was responsible for implementing the resizing process in Ameritech's information technology organization, which included Ringl's division. Several months after Ringl's termination, in a live telecast to Ameritech employees, Goetz stated that Ameritech should be hiring "young people out of college, people under the age of 45." However, Ringl has produced no evidence that Goetz was ever involved in the decision to discharge her. Instead, she was identified for potential termination by a ranking session. As the district court noted, Ringl "admits that she has no evidence that the ranking session was biased in any way." We agree with the district court that, without some evidence that he was involved in the decision to terminate Ringl, Goetz's comment alone is simply insufficient to establish that Ringl's termination was related in any way to her age.
 
 
 19
 Ringl next claims that her termination constituted age discrimination under a disparate impact theory. Under Michigan law, a disparate impact theory requires a showing that an otherwise facially neutral employment policy achieves a discriminatory effect on members of a protected class. Lytle, 209 Mich.App. at 185. Initially, Ringl bears the burden of establishing a prima facie case of disparate impact. Once Ringl has done so, the burden shifts to Ameritech to articulate some legitimate, nondiscriminatory justification for the policy. Johnson v. United States, 30 F.3d 45, 48 (6th Cir.1994). The burden then shifts back to Ringl to prove either pretext or that a less discriminatory practice existed that would have achieved the same business purpose. Id.
 
 
 20
 To support her claim here, Ringl has produced evidence from Gary Morris, who conducted a statistical analysis for Ameritech regarding the adverse impact of the resizing process on race, gender, and age. Morris concluded that the termination process would impact those over forty years of age in a statistically significant manner. Ringl also produced expert evidence indicating that the selection rate for termination would increase steadily with the age of employees under Ameritech's reduction plan. According to Ringl's expert evidence, within the salary five grade employees, those who were under the age of forty were selected at a rate of 5.1 percent, while those over the age of forty were selected at a rate of 9.6 percent.
 
 
 21
 We are satisfied that Ringl's evidence here establishes a prima facie case of age discrimination based on a disparate impact theory. Accordingly, under Michigan law, the burden then shifts to Ameritech to provide some legitimate, nondiscriminatory justification for its termination policy. Ameritech claims that its decisions were made for purely economic reasons and were not motivated in any way by age considerations. To support its policy, Ameritech notes that it no longer maintains a monopoly in its business and, as a result, has been forced to make reduction decisions that would permit Ameritech to compete effectively with new business opponents. We are satisfied that Ameritech's justification fulfills its burden of articulating a nondiscriminatory motive for its termination policies.
 
 
 22
 Because Ameritech offered justification for its policies, the burden shifts back to Ringl to show that Ameritech's policies were either a pretext, or that some less discriminatory method was available. However, Ringl has failed to offer any evidence of pretext or any evidence that Ameritech's legitimate business goals could have been served in a less discriminatory manner.
 
 
 23
 Therefore, no reasonable trier of fact could conclude that the evidence produced by Ringl establishes that Ameritech's actions were motivated by Ringl's age. Accordingly, the district court did not err in granting summary judgment to Ameritech on Ringl's age discrimination claim.
 
 4. Breach of Contract
 
 24
 Ringl next claims that Ameritech entered into a contract with her by virtue of three different statements issued by the company. The first statement was that Ameritech's termination decisions would be implemented in an "objective, fair, and equitable" manner. The second statement was that Ameritech would "place qualified managers whose positions have been eliminated into available positions in their home company." The third statement was that managers who were terminated were permitted to seek a formal review of the termination decision from a review panel.
 
 
 25
 Under Michigan law, a contract requires (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. Thomas v. Leja, 187 Mich.App. 418, 422 (1991). Even if accepted as true, none of the statements offered by Ringl create a contract under Michigan law. Moreover, even if Ameritech's statements did constitute various contracts, Ringl has offered no evidence that Ameritech failed to comply with the terms of the alleged agreements.
 
 
 26
 5. Intentional Infliction of Emotional Distress
 
 
 27
 Although the Michigan Supreme Court has never recognized the tort of intentional infliction of emotional distress, the Michigan appellate courts that have addressed the tort have adopted the position of the Restatement (Second) of Torts. See Cebulski v. Belleville, 156 Mich.App. 190, 194 (1986); Ledl v. Quik Pik Food Stores, Inc., 133 Mich.App. 583 (1984); Warren v. June's Mobile Home Village & Sales, Inc, 66 Mich.App. 386 (1976). The initial element required for an intentional infliction of emotional distress claim is
 
 
 28
 conduct that has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which a recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
 
 
 29
 Cebulski, 156 Mich.App. at 195.
 
 
 30
 On the day she was terminated, Ringl was called into a conference room and was told in private that she had been terminated. The other individual in the conference room then took steps to insure that no one else would see Ringl leave, including looking both ways down the hall to make sure no one was nearby, and holding the elevator for her. Such conduct could hardly be considered outrageous.
 
 
 31
 Ringl also claims that Ameritech's repeated statements that only the worst performers would be terminated exacerbated her termination experience and constituted outrageous conduct. However, it is hardly surprising that, when faced with the difficult decision to reduce its workforce, Ameritech wished to retain its top-performing managers. It is also not surprising that Ameritech attempted to reassure its remaining employees that productivity and solid performance would result in continued employment.
 
 
 32
 Therefore, given the context of Ameritech's statements and the circumstances of Ringl's termination, no reasonable trier of fact could conclude that Ameritech's actions constitute outrageous conduct of such an extreme degree "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Accordingly, the district court did not err in granting summary judgment to Ameritech with regard to Ringl's claim of intentional infliction of emotional distress.
 
 6. Defamation
 
 33
 Under Michigan law, defamation requires (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the defendant, and (4) either actionability of the statements irrespective of special harm, or the existence of special harm caused by the publication. Gonyea v. Credit Union, 192 Mich.App. 74 (1991).
 
 
 34
 Ringl claims that Ameritech engaged in defamation when it repeated public representations that only managers who were the worst performers would be terminated. Ringl's claim is that, in classifying terminated employees as the worst performers, Ameritech branded her as a poor employee.
 
 
 35
 However, the statements to which Ringl refers were merely declarations of Ameritech's policies with regard to its business decision to reduce its number of managers. Although Ringl was eventually identified as a manager to be terminated, it does not logically follow that Ameritech's statements regarding its termination process were statements concerning Ringl. Furthermore, even if Ameritech's act of terminating Ringl constituted a statement regarding Ameritech's opinion of her abilities, such statements were not false. Ameritech conducted its reduction plan according to the parameters expressed to its employees, and Ringl was selected for termination pursuant to this process.
 
 
 36
 Ringl has simply failed to identify any statement or action taken by Ameritech that varies from the truth. Accordingly, the district court did not err in granting summary judgment to Ameritech with regard to Ringl's defamation claim.
 
 III. Conclusion
 
 37
 For the foregoing reasons, we agree with the district court that Ringl has failed to provide sufficient evidence under any cause of action from which a reasonable trier of fact could find in her favor. Accordingly, the judgment of the district court is affirmed.